# WHEELING.

## MAXWELL *v.* KENT.

### Decided June 18, 1901.

1. EJECTMENT—*Boundary—Evidence—Verdict.*

In an action of ejectment in which the controversy turns wholly upon the location of a boundary line between the lands of the litigating parties, and competent, material and weighty evidence is adduced by both parties in support of their respective claims as to the true location of the line, and there is a verdict for the defendant, such verdict should not be set aside as being against the weight of the evidence. (p. 544).

2. INSTRUCTION PREJUDICIAL—*Verdict—Judgment.*

An instruction, given at the request of the defendant and covering only a part of the theory of the defense to which it relates and tending to prove which there is evidence in the case,

is open to criticism because of its narrowness, but if no general instruction, stating the law upon such theory, is given in the case, and the instruction is not in such terms as to give undue importance to the evidence referred to in it, and it is manifest that the giving of such instruction has not operated to the prejudice of the plaintiff, the judgment will not be reversed on account thereof. (p. 548).

3. EJECTMENT—*Description of Property—Title.*

If, in an action of ejectment, the case is such that the rights of neither of the parties are in any way dependent upon any forfeiture under the laws relating taxes, and there is no evidence in the case of the payment of taxes on any of the property by either of them, and the jury are instructed, at the intsance of the defendant, that, if they believe from the evidence the land in controversy is included in the defendant's deed and he has been in actual possessio nof any part of the land embraced in the boundary described in his deed, said possession extends to his exterior boundaries, and if continued for a period of ten years and having paid all the taxes on the same for that period of time, they must find for the defendant; the giving of such instruction, although obviously objectionable, is not a reversible error, when it appears that the plaintiff could not have been prejudiced thereby. (p. 551).

4. COURT'S RULING—*Exception—Appellate Court.*

A ruling of the court below to which no exception is taken will not be noticed in the appellate court. (p. 552).

5. TRIAL—*Evidence—Exception—Error.*

When evidence is excluded and the action of the court in excluding it is relied upon in the appellate court, it must appear on the record that the evidence rejected was or would have been relevant, material and important to make its rejection available as a ground of error. (p. 553).

Error to Circuit Court, Raleigh County.

Action by Alfred B. Maxwell against John T. Kent. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

McCREERY & KEATLEY and A. P. FARLEY, for plaintiff in error.

McGINNIS, McGINNIS & BALL, for defendant in error.

POFFENBARGER, JUDGE:

In March, 1898, A. B. Maxwell brought an action of ejectment in the circuit court of Raleigh County against John T. Kent,

claiming in his declaration a long strip of land, about two hundred and twenty-two poles in length and averaging something over nine poles in width, the southwestern boundary line thereof being straight and the opposite line irregular, and nine poles distant from the other at the western end, and eight poles distant from it at the other end. Only part of this strip, containing ten and three-fifths acres, is in controversy, less than three acres of it near the eastern end of the strip. About six years before the suit was commenced, Kent cleared the disputed land and so moved the division fence between him and Maxwell as to enclose it with his land and has since cultivated it.

The question involved is purely one of boundary lines, the land mentioned in the declaration being claimed as part of a large tract of two hundred and twenty-six acres, belonging to Maxwell, and bounded as follows: "Beginning at a white pine on the Giles, Fayette and Kanawha Turnpike Road; thence N. 22 degrees E. 179 poles, crossing White Stick Creek at 25 poles and the location of said road at 140 poles, to two white oaks, one of them marked F, on the division line between Stuart and Beckley; thence with the same reversed N. 68 degrees W. 202 poles, recrossing the road to a large chestnut and gum; thence leaving said line S. 22 degrees W. 179 poles, crossing White Stick Creek at 108 poles, to a locust stake, near the top of a high ridge; thence S. 68 degrees E. 202 poles, crossing Berry's Branch to the beginning." The earliest deed in the record, relating to this tract bears date, March 17, 1854.

Adjoining this tract on the southeast and owned with it by Maxwell, lies another tract of fifteen and one-fourth acres, bounded as follows: "Begining at a corner of the last mentioned tract, on a white pine on the Giles, Fayette and Kanawha Turnpike Road, and with said road N. 43 degrees 1-2 E. 69 poles crossing White Stick Creek at 50 poles; N. 11 degrees E. 48 poles; due North 14 poles; N. 50 degrees E. 18 poles; N. 21 degrees W. 10 poles; N. 33 degrees W. 11 poles to the intersection of the first mentioned tract, and with the same reversed, S. 22 degrees W. 156 poles to the beginning."

The white pine and locust stake corners of the two hundred and twenty-six acre tract are in dispute. They are respectively the southeastern and southwestern corners. The controversy turns upon the location of these two corners. According to the calls of the deed, the tract is a parallelogram in form and the

other two corners are well known and not disputed by either party. All of its lines exceed in length the distances called for in the deed, the northern and southern lines being twenty poles too long and the eastern and western thirty-two poles too long, as contended for by the plaintiff, and about twenty or twenty-one poles according to the contention of the defendant. Plaintiff claims the white pine stood at a certain point in the road and was grubbed out many years ago, starting from that point, the line crosses White Stick creek at forty-one poles instead of twenty-five, and the road at one hundred and sixty-eight poles instead of one hundred and forty. There is also a discrepancy in the length of the lines of the fifteen and one-fourth acre tract, the beginning corner of the survey of which is the same white pine. However, there is evidence, tending to prove the white pine corner is at the point claimed by the plaintiff. By deed, dated November 15, 1853, Alfred Beckley who originally owned the two hundred and twenty-six acre and fifteen and one-fourth acre tracts and the lands adjoining it on the south, east and west, conveyed to Thos. Warden a tract of land containing one hundred and ninety-two and one-fourth acres, known as the Tyree tract, and lying east the Maxwell lands. Its description calls for the same white pine as one of the corners, the southwestern, while its eastern line begins on the division line between Stuart and Beckley, is parallel with the eastern line of the two hundred and twenty-six acre tract, is two hundred poles long, and runs to a white oak marked B for the southeastern corner, and thence north sixty-eight degrees west one hundred and sixty-two poles to a stake one and one-half poles to the right, north, of the white pine. The white oak marked B is well known and there is a marked line from it to the point claimed by the plaintiff as the place at which the white pine stood. Allowing three degrees for variation, this line was run north sixty-five degrees west, and indicates that the claim of the plaintiff is correct. The distance to White Stick creek is stated in this deed to be sixty poles, following the road, and in the deed to the fifteen and one-fourth acre adjoining tract, to be fifty poles, but is found by measurement to be about sixty poles. John Greer, an old man, testifies that a pine tree, marked as a corner and standing at the point contended for by the plaintiff, was seen by him when a boy and was then known as the Eugene Fleason corner, that it had often been pointed out to him by interested parties, now dead, as the

Fleason corner, and that he and a man by the name of Blanken-
ship grubbed the tree up many years ago. Samuel L. Davis
testifies that he had known it as the Fleason corner and had
helped to make one or more surveys, running to that corner, and
on one occasion helped Alfred Beckley to survey the Tyree tract
in which survey they ran to said point and Alfred Beckley had
spoken of the corner at that time. Edwin Prince, a former
owner of the Tyree tract had regarded that point as the corner.
There was other evidence, tending to support the claim of the
plaintiff on this point, and but little direct evidence, other than
what has been noted, tending to disprove his claim as to this
corner.

For the location of the other disputed corner, the plaintiff
relies principally upon the fact a line run from the white oak
marked B through the point claimed by him for the white pine
corner will close with the line from the gum and chestnut, the
western line, at a point two hundred eleven poles distant from
said gum and chestnut corner, that being the length of the east-
ern line as claimed by him. At this point of intersection, there
is no stake or any thing to indicate that it is the corner except
that it is near the top of a ridge; nor is there any marked line
to it from the alleged white pine corner, although it runs part of
the way through uncleared land. The defendant claims this
corner is some twenty or twenty-five poles further north on the
line, running from the gum and chestnut. Two other tracts,
formerly owned by Alfred Beckley, corner with this two hundred
and twenty-six acre Maxwell tract at the southwest. One is
known as the J. O. Addison tract, lying on the west, the line
dividing it from the Maxwell tract being the line from the gum
and chestnut, one hundred and seventy-nine poles long and ter-
minating at the locust stake. In the line of the Addison tract a
white pine corner is called for in the deed, by running from the
locust stake corner north sixty-seven degrees west one hundred
and forty poles. This white pine corner seems to be well known,
and line run from it south sixty-six east one hundred and fifty
poles, terminates at the point claimed by the defendant for the
locust stake corner. South of the Addison tract and cornering at
the locust stake, lies the Otis Colwell tract. Its eastern line is
a continuation of the line from the gum and chestnut, the locust
stake is the beginning corner, from which the deed calls for south
twenty-three degrees west one hundred and sixty-two poles to a

chestnut and chestnut oak. A line run from the chestnut and chestnut oak corner, which seems to be well known, north twenty-six east, following a marked line, one hundred and seventy-five and one-fifth poles, reaches the point claimed by the defendant for the locust stake corner. The line from the white pine corner of the Addison tract is marked also. It will be noticed that these lines overrun. J. H. Lemon testifies that about eight years before the date of the trial, he accompanied D. W. Beckley and George Prince who were then running a line to the locust stake corner, and they then found at the point claimed by the defendant traces of an old fence which had been destroyed by fire, leaving whole rails and pieces of rails remaining on the ground, and Beckley at that time "kicked over a locust stake there." Afterwards he was there when the line was run for Kent and the stake was gone and the fence was all gone. Since this action was commenced he had been back there and found a locust stake within five feet of where Beckley had found the old one, but not the same stake. The stake was produced at the trial and identified by Lemon and others. It was found near the top of a ridge, in a depression made by the uprooting of a tree, and covered up with leaves and trash. In another part of his testimony Lemon says he saw the first stake there eighteen or nineteen years ago. T. K. Scott, John T. Kent and William Willis also testify to the finding of the stake at that point, but not to the existence of the old stake mentioned by Lemon. Willis owns part of the Otis Colwell tract, says his line to the point where the stake was found is well marked, he has been at that corner often and saw a fence there years ago, and it cornered there at a right angle. He also testified to the existence of marked trees along a line from that point towards the disputed white pine corner on the turnpike. Joseph Caldwell once owned the two hundred and twenty-six acre tract, and J. F. Miller testifies that in 1853 or '54 he worked for Caldwell on said land and among other things built a fence for him just inside of the line here in dispute and intended for the line fence between Caldwell and Beckley. He says he has recently gone over the ground and found evidences of the old fence he built, and that the corner of the fence was at the point at which the stake was found. From that point it ran with the lines towards the gum and chestnut in one direction and southeast towards the turnpike where the white pine is called for. He, as well as several other witnesses,

testified to other facts tending to prove that the southern line runs from the point where the stake was found, and that a fence once stood on it, such as the character of the timber, undergrowth, stumps along the line and marked trees along it and another supposed line a few rods south of it. The deed to the several tracts here mentioned and others, relating to contiguous lands, were introduced as evidence in the case.

The result of the trial was a verdict for the defendant. A motion by the plaintiff for a new trial was overruled, and the action of the court excepted to. Upon the petition of the plaintiff, assigning this and numerous other rulings of the court as errors, the case is in this Court upon a writ of error.

The giving of the following instruction at the instance of the defendant is assigned as error: "The court further instructs the jury that marked lines and ancient fences are elements of proof to be considered when applicable in all questions of boundary, and in this case if the jury believe that there was an ancient fence at or near the locust stake called for as corner of the two hundred and twenty-six acre tract owned by Joseph Caldwell, which marked his boundary line at that point, the line of said fence as an element of proof, is entitled to consideration in determining the true line of the land in controversy, and the marked lines on the land in controversy are entitled to more weight than the marked lines to adjacent tracts." In his argument against the propriety of this instruction, the plaintiff in error assumes that the location of the white pine beginning corner as claimed by him is clearly proven, and that three of the corners of the tract being thus made certain, the closing of the lines of the tract of land according to the courses stated in the deed locates the missing corner, the stake corner, at the point claimed by him. If there were no evidence, tending to show that the white pine corner on the turnpike is farther north than the point claimed by the plaintiff, the instruction should have been refused. It being clear and undisputed that the northern and southern lines of the tract are parallel, and the course and location of the western line being undisputed, it is absolutely certain that if the stake corner is at the point claimed by the defendant the white pine corner can not be at the point claimed by the plaintiff, and thus is presented a well defined question of fact for the jury as to whether the white pine corner is at the point contended for by the plaintiff or far enough north on the turn-

pike to place all the land claimed by Kent south of it and therefore outside of Maxwell's line. As already shown there is evidence in the record indicating that the locust stake corner is where the defendant claims it is and also some contradictions and inconsistencies, although not irreconcilable, in the evidence introduced by the plaintiff to prove his claim as to the location of the white pine corner. The evidence relating to the existence of an old fence and the time and purpose of its erection is only part of the defendant's evidence as to the location of the locust stake. It is relevant and material. It was entitled to consideration by the jury, and so the court said by this instruction. The defendant had right to have the attention of the jury directed by an instruction to all the evidence, relating to his claim respecting the locust stake corner, but as he has contended himself with a direction of their attention to part of it only, it is difficult to see how the plaintiff is thereby injured. Before leaving this phase of the case, it is deemed proper to advert to another fact which is inconsistent with the claim that the evidence adduced by the plaintiff respecting the white pine corner is not conclusive. The eastern and western lines of the tract are supposed to be parallel. The western line is well marked and undisputed and is found by survey to be south twenty-four and three-fourth degrees west. The eastern line, surveyed as claimed by the plaintiff, is north twenty-six and one-half east. Putting that line on the same bearing as the western line would certainly throw its southern terminus at a point farther north and east of the point claimed by the plaintiff, and probably at about where the defendant claims the corner is. It must be borne in mind also that the southern line, surveyed upon the theory of the plaintiff, is only two hundred and eighteen and one-half poles long and the northern line two hundred twenty-two poles long, while in the deed these two lines are stated to be equal in length. Correction of the bearing of the eastern line would decrease, if not wholly obviate, this discrepancy in the length of the lines. While the instruction is open to criticism by reason of its narrowness, the plaintiff is not injured or prejudiced by it, for there is no general instruction covering the theory of the case, to which the evidence noted in the instruction relates. It is not, therefore, a repetition and improper as laying too much stress upon that particular part of the evidence in the case.

The action of the court in giving the following instruction for the defendant is also excepted to: "If the jury believe from the evidence in this case that the defendant John T. Kent, obtained his title from the true owner of the land by deed, and that the boundaries described in said deed includes the land in controversy, and that the said defendant John T. Kent has been in actual possession of any part of said land embraced in the boundary described in said deed, said possession extends to his exterior boundaries, and if continued for a period of ten years, and having paid all the taxes on the same for that period of time the jury must find for the defendant." The argument against it is that there is no proof that the defendant ever paid any taxes on the land or that he had been in possession of any part of the land in controversy for the period of ten years. That part of the instruction, relating to the payment of taxes, must have been inadvertantly inserted. There is no evidence of the payment of taxes by either of the parties, nor is the case on in which the payment of taxes would be material. There is no intimation in the record that either of the parties claims under any forfeiture, respecting any part of the land. However, it is clear that the plaintiff could not have been prejudiced by this reference in the instruction to the payment of taxes. The jury must have ignored that part of the instruction or all of it, for to have reached their verdict upon the theory of the instruction they must have found that Kent had paid the taxes on the land. That they could not have found, for there is no evidence of it. The instruction in effect tells the jury that the defendant, in order to prevail in the trial, must prove his actual possession and payment of the taxes on the land. That is more than the law required of the defendant in this case and the instruction was prejudicial to the defendant rather than to the plaintiff, if it had any effect. While there was no evidence that the defendant had been in possession of any part of the land in controversy for ten years, there was evidence of his having had actual possession of part of the land included in his deed for more than ten years and that is enough to warrant the giving of the instruction on that point. *Garrett* v. *Ramsey,* 26 W. Va. 345; *Congrove* v. *Burdett,* 28 W. Va. 220. The plaintiff himself admits that he and the defendant had together built a line fence on what he, plaintiff, claims to be the line, "twelve or thirteen years" before the date of the trial of this case, April, 1899. This is virtually an admis-

sion of defendant's occupancy of his land at that time, and sufficient evidence to justify the giving of the instruction.

It is claimed the court erred in refusing to give instruction No. 6, asked for by the plaintiff. The record shows it was refused "on the ground that it came too late," but is silent as to the time when it was requested. In his petition for the writ of error, the plaintiff says it was requested before the jury retired to their room, but the petition is not part of the record of the case in the circuit court. It is no evidence of what occurred there. In *Winters* v. *Hull,* 31 W. Va. 450, this Court held that, "The Appellate Court will not reverse a judgment because the court refused to give instructions submitted to him after the jury have been directed to retire as being too late, unless it affirmatively appears that the court below manifestly abused the large discretion given it in all such matters." There being nothing in this record to show under what circumstances the instruction was refused, it follows that there is nothing in it from which this Court can find that the lower court abused its discretion, and the exception must be held not to be well taken.

Complaint is also made that the court refused to permit witness, Milton Curtis, a surveyor, who had surveyed the land in controversy and testified that it is embraced in the deed to the Maxwell two hundred and twenty-six acre tract, to answer the question, "Did you make a correct survey of that according to the title papers you had?" He had already testified that he had made the survey from the description of the land set forth in the deeds, and gone over it in detail, showing how he had made it. The correctness of his measurements and reading of the instrument was not questioned. His answer to the question could have added nothing to the value of his testimony. The jury already had his opinion that the land in controversy belonged to the plaintiff and his reason therefor. What more could he have said for the plaintiff? Upon what principle was the plaintiff entitled to have a mere repetition of the witnesses testimony, it being perfectly clear and well understood?

The court refused to permit the same witness to say whether he had surveyed the defendant's land, and this action of the court is excepted to. But he was afterwards allowed to testify that he had assisted the county surveyor in making such a survey. In reference to that he was thoroughly examined by both

parties and pointed out, as did the county surveyor also, the inconsistencies of this survey and its failure to harmonize with the descriptions and surveys of adjacent lands. Whatever the value of this may have been to the plaintiff he had the benefit of it, and cannot be heard to complain because it did not go in just at the time he sought to introduce it. If it was intended to obtain anything other than the existence of these discrepancies in the answer, there is nothing in the bill of exceptions to show it, and this Court is, therefore, unable to say whether it is material or not. When evidence is excluded, it must appear in the record, that the evidence rejected was or would have been important and material or relevant to the issue. So that it is advisable to show to the court what it is expected to prove in answer to the question propounded." Hogg's Pl. & For. 428 and cases cited.

A. B. Maxwell, while testifying in his own behalf, was asked if Alfred Beckley ever owned the land where Mr. Kent lives now, or part of it, and replied "Yes sir; he owned all the land in the neighborhood; Kent's and mine, too, and Tyree's." It is argued that this was error, but the record shows no exception. .

The court admitted, over the objection of the plaintiff, deeds made by Alfred Beckley to Dyer, Allison & Co. and Jas. H. Phillips, conveying to them, respectively, the Addison and Otis Colwell tracts, hereinbefore mentioned as being contiguous to the two hundred and twenty-six acre tract. In this the action of the court was so clearly right that no discussion of the matter is necessary.

It is objected that the court refused to strike out the testimony of J. H. Lemon, relating to the locust stake, the substances of which has been given. Such a stake was one of the monuments mentioned in the deed, and the witness testifies to having seen it at a point which it is not unreasonable to say was the corner at which the deed located it. His testimony on this point was relevant and material and was properly admitted.

A further objection is that the court refused to permit T. K. Scott, witness and surveyor, to say how the running of the division line as contended for by the defendant would affect a small lot belonging to J. M. Williams and touching what the plaintiff claims is the white pine corner. There is nothing in the record to show when or from whom Williams obtained the lot nor any thing from which it appears that such evidence either relevant or important, for which reason the exception is insufficient, even

if it could have been shown that the circumstances were such as to render it admissible.

It remains now to consider the action of the court in overruling the motion for a new trial. If the court improperly rejects evidence, offered by either of the parties and it is excepted to, and there is a verdict against the exceptor, it will be set aside, even though the court may believe that the verdict of the jury ought not and would not have been different had the evidence been admitted. *Corder* v. *Talbott,* 14 W. Va. 277. But a judgment will not be reversed because evidence was excluded from the jury, unless such exclusion was to the prejudice of the exceptor. *Tompkins* v. *Kanawha Board,* 21 W. Va. 225. Where the evidence is conflicting a new trial will not be granted. *Id.* That a new trial may be had manifest wrong and injustice must have been done. It is not enough that the court would have rendered a different verdict. *Shrewsbury* v. *Miller et als.,* 10 W. Va. 116. A new trial will not be granted because evidence admitted was irrelevant, if it could not possibly prejudice the opposite party. *Huffman* v. *Alderson,* 9 W. Va. 616. Where the verdict of the jury is such as to clearly indicate prejudice, passion or corruption in arriving at their conclusion, the verdict should be set aside. *Unfried* v. *R. R. Co.,* 34 W. Va. 260. When the verdict is against the weight of evidence, it should be set aside and a new trial granted. *Ruffner* v. *Hill,* 31 W. Va. 428. But the verdict of a jury ought not to be interfered with by granting a new trial, if, when most favorably considered in support of the verdict, it does not still appear that the verdict was plainly not warranted by the evidence. *Gwynn* v. *Schwartz,* 32 W. Va. 847. From the evidence in this case as hereinbefore substantially detailed, it appears that there is evidence in support of the claims and contentions of the defendant and, therefore, upholding the verdict. The plaintiff introduced evidence conflicting with it, but it is only the evidence of facts, tending to establish one theory of the case, while that of the defendant tends to support another and conflicting theory. It was purely a question of fact as to whether the boundary line was at one place or at another, with competent, material and weighty evidence before the jury in favor of both locations and nothing conclusive as to either of the parties. Moreover, there is nothing in the record or verdict indicative of partiality, passion or prejudice, or disclosing any special circumstances or conditions which would

warrant interference with the verdict upon the principles laid down in *Unfried* v. *R. R. Co., supra; Gilmer* v. *Sydenstricker,* 42 W. Va. 56; and *Johnson* v. *Burns Bros.,* 39 W. Va. 658. The motion for a new trial was properly overruled and judgment rendered for the defendant. The judgment of the circuit court is therefore affirmed.

*Affirmed.*