# CHARLESTON.

## HARMAN *v.* ALT.

Submitted September 8. 1910.    Decided May 2, 1911.

1. BOUNDARIES—*Oral Agreement—Binding Effect.*
   Disputed boundaries between adjoining tracts of land may be settled by express oral agreement, executed immediately, and accompanied by possession. (p. 290).

2.  ADVERSE POSSESSION—*Effect—Unlawful Entry and Detainer.*
    Actual, open, notorious, exclusive and continuous adverse
    possession of land for more than ten years, confers good legal
    title, enabling the owner to maintain an action for unlawful
    entry and detainer against one who enters unlawfully. (p. 291).

3.  SAME—*Acquiescence by Mistake—Estoppel.*
    The rule that acquiescence or admissions by a landowner,
    made under a mistake as to his rights, will not estop him from
    subsequently enlarging his possession to the limits of his deed,
    does not apply as against one who has acquired good title by
    adverse possession. (p. 291).

4.  FORCIBLE ENTRY AND DETAINER—*Forcible Entry—Right of
    Action.*
    If an entry on land, though peaceable, be unlawful, the owner
    may recover the possession from the intruder in an action of
    unlawful entry and detained. (p. 291).

Error to Circuit Court, Tucker County.

Action by S. C. Harman against W. E. Alt. Judgment for
plaintiff, and defendant brings error.

*Affirmed.*

*C. O. Strieby,* for plaintiff in error.

*J. Wm. Harman,* for defendant in error.

MILLER, JUDGE:

In an action of unlawful entry and detainer the court below
directed a virdict for plaintiff, and entered judgment thereon
that plaintiff recover the land sued for. To review that judg-
ment this writ of error was awarded the defendant.

There is no substantial merit in the first point, that the
summons is defective. *Cunningham* v. *Sayre,* 21 W. Va. 440,
we think decisive of this question.

We are of opinion also, that the judgment below should be
affirmed on two grounds: First, that there was an agreement
as to the boundary line in dispute, fixing it where plaintiff
claims it, and binding defendant; second, that plaintiff by
actual, open, notorious, exclusive and continuous adverse pos-
session of said land, for more than ten years, acquired good title
thereby, rendering his ouster by defendant, though peaceable,
unlawful, entitling plaintiff to judgment for possession.

On the question of the agreement line, the uncontradicted evidence is, that plaintiff and defendant own adjoining lots, parts of a large tract, owned and divided into lots by a former owner. Plaintiff's lot of forty-seven acres lies north east of defendant's tract, described as containing one hundred and ten and one fourth acres, more or less. The dividing line called for in plaintiff's deed, and in the deed to W. F. Nine, defendant's immediate grantor, and in deeds prior to his, is a line, N. 64° W. The distance called for in plaintiff's deed, and in the deeds to and from his predecessors, is eighty-three poles, in defendant's deed the distance called for is one hundred and fourteen poles. W. F. Nine, from whom defendant purchased his lot by title bond, May 1, 1903, and took his deed, May 11, 1903, bought this lot of Eli Nine in 1890. In 1897, Harper owned the lot immediately east, and F. M. Pearson, the one on the west. There was uncertainty and dispute about the exact location of the division lines. Harper and Pearson were unwilling to build division fences, as desired by Nine, until these lines should be definitely and certainly located. Nine employed R. P. Pearson, a surveyor, to make a survey, calling in as parties, not only Harper and Pearson, but also the plaintiff Harman. Harman carried the chain, at least a part of the time. All agreed on the south east corner of the Nine lot as the beginning corner. The survey definitely located the lines and corners. There was no dissent. Nine insisted on planting stones at each corner, which was done, and pointers were also made to the corners. As then located by Pearson, the division line between plaintiff and defendant is a line, between stone corners, S 59¼ E. When Alt bought his lot in May, 1903, Nine pointed out to him all these lines and corners, as located by Pearson. In Nine's deed to Alt these stone corners are specifically called for, and the land further described as the same land purchased by Eli Nine from A. C. Harness, and conveyed by said Eli Nine to W. F. Nine, February 19, 1890. Immediately after the survey by Pearson, Harman and Alt joined in building a division fence, on the line S. 59¼ East, building it for thirty or forty rods of posts, wire and boards, to a point where they struck the timber, and from thence out of logs and poles to a stone bluff and a laurel thicket, and to and over it, using logs and poles, making a complete barrier along the entire line, and so

maintained this fence until Alt bought from Nine, and afterward the fence was continued and maintained jointly by Alt and Harman, without controversy as to its location, until in November, 1908, when defendant, without plaintiff's knowledge or consent entered and cut some timber, claiming the right to go over on Harman to a marked line, some three or four rods north of the Pearson line, because of an alleged mistake in the Pearson survey. The land between these two lines is the land now in controversy. After cutting the timber Alt was notified by Harman to cease trespassing. A few days afterwards, however, in the absence of Harman, Alt entered, tore down the division fence, and moved it over on a so called old line. Wherefore the suit.

It is said that because Nine, at the time of the survey by Pearson, in 1897, had not disputed with Harman as to the location of the line, and Harman had not agreed before hand to be bound by that survey, though he participated therein, and afterwards acquiesced, and accepted the same, neither Nine nor Alt are concluded or estopped from enlarging their boundary by going over to the old marked line. This, however, is not the law. *Gwynn* v. *Schwartz,* 32 W. Va. 487, and *Teass* v. *City of St. Albans,* 38 W. Va. 1, hold, that disputed boundaries between two adjoining tracts of land may be settled by express oral agreement, executed immediately, and accompanied by possession according thereto. And, as particularly applicable to the contention of defendant's counsel in this case, point six of the syllabus in the first case, declares that, long acquiescence by one adjoining proprietor in a boundary established by the other is evidence of such agreement so fixing the division-line between them. "What is meant by long acquiescence", says Judge GREEN, in this case, "is not definitely settled by the decisions", but, as particularly applicable to the case here, point eight of the syllabus says: "Such acquiescence, in this State for a period of over ten years will justify a jury in inferring, that such parol agreement establishing such division-line existed; and a verdict based on such inference ought not to be set aside as plainly contrary to the evidence." It was wholly unnecessary, however, for the court below in this case to have submitted to a jury the question of the fact of the agreement by plaintiff, for the evidence proves beyond doubt, and there is nothing to the

contrary, that Harman was a party to that agreement. He participated in the survey, and testifies positively, that he did, and he is not contradicted by Nine, that after that said survey, he and Nine agreed on the line established by Pearson, and pursuant thereto built the fence on that line. The fence was intended to, and did, to the satisfaction of the parties, constitute a complete barrier between their respective lots. It constituted a real and substantial inclosure by Harman of his land, sufficient we think to satisfy all the requirements of the statute of limitations, and the decisions of this Court in *Parkersburg Industrial Co.* v. *Schultz*, 43 W. Va. 470, and other cases, much relied on by counsel for defendant.

But conceding that there was no agreement binding Harman, there was actual, open, notorious, exclusive, and continuous adverse possession by him, for more than ten years before defendant entered and tore down the division fence. This gave him the absolute, indefeasible title to the land by adverse possession, even though it be conceded *arguendo*, that originally the defendant or his predecessors in title may have had the better title. Plaintiff's title became good title by adverse possession. Such title by adverse possession confers legal title, enabling the owner not only to defend, but to maintain ejectment or other actions thereon. *Parkersburg Industrial Co.* v. *Schultz, supra,* syllabus, point five.

The proposition of defendant's counsel, based on *White* v. *Ward,* 35 W. Va. 418, that acquiescence or admission by a landowner, made under a mistake as to his rights, will not estop him from subsequently enlarging his possession to the limits of his deed, does not apply as against one who has acquired good title by adverse possession. This case distinctly so decides.

The point is made, however, that defendant's entry was peaceable, not forcible. This is not a defense if his entry was unlawful. This action goes against one who enters peaceably, if his entry be unlawful; and his entry is unlawful, though peaceable, as against the true owner of the land. In this case we hold that plaintiff had acquired by adverse possession absolute title to the land in controversy, on which he could maintain ejectment or other action. The entry by defendant was therefore unlawful, if not forcible. His entry was that of a stranger to the paramount title of the plaintiff. He must therefore sur-

render the possession thus unlawfully acquired. *Fisher* v. *Harman,* 67 W. Va. 619, 625, citing *Duff* v. *Good,* 24 W. Va. 682; *Franklin* v. *Geho,* 30 W. Va. 27; *Davis* v. *Mayo,* 82 Va. 97; *Fore* v. *Campbell, Id.* 808; *Olinger* v. *Shepherd,* 12 Grat. 462.

These conclusions, we think, constitute a complete answer to all the points presented in argument, calling for no further reply thereto, and resulting in an affirmance of the judgment below. Judgment affirmed.

*Affirmed.*