# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2013 Term

_____

No. 12-0227

_____

FILED

October 3, 2013
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### DAVID A. WALLACE,
Respondent Below, Petitioner

v.

### JOAN PACK, DARLO PACK, DELLO PACK,
### DON PACK, DELSO PACK, AND MINNIE HARRIS,
Petitioners Below, Respondents

_____

Appeal from the Circuit Court of Summers County
The Honorable Robert Irons, Judge
Civil Action No. 99-C-19

AFFIRMED

_____

Submitted: September 10, 2013
Filed:  October 3, 2013

William S. Winfrey, II, Esq.          E. Kent Hellems, Esq.
Princeton, West Virginia              Hinton, West Virginia
Attorney for Petitioner               Attorney for Respondents

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1.      "The burden is upon the party who claims title by adverse possession to prove by clear and convincing evidence all elements essential to such title." Syl. pt. 2, *Brown v. Gobble*, 196 W. Va. 559, 474 S.E.2d 489 (1996).

2.      "The deference accorded to a circuit court sitting as factfinder may evaporate if upon review of its findings the appellate court determines that: (1) a relevant factor that should have been given significant weight is not considered; (2) all proper factors and, and no improper factors, are considered, but the circuit court in weighing those factors commits an error of judgment." or (3) the circuit court failed to exercise any discretion at all in issuing its decision." Syl. pt. 1, *Brown v. Gobble*, 196 W. Va. 559, 474 S.E.2d 489 (1996).

3.      "One who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of the following elements for the requisite statutory period: (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title." Syl. pt. 3, *Somon v. Murphy Fabrication Co.*, 160 W. Va. 84, 232 S.E.2d 524 (1977).

4.	"Actual, open, notorious, exclusive and continuous adverse possession of land for more than ten years, confers good legal title, enabling the owner to maintain an action for unlawful entry and detainer against one who enters unlawfully." Syl. pt. 2, *Harman v. Alt*, 69 W. Va. 287, 71 S.E. 709 (1911).

5.	"In the law of adverse possession, continuous possession means possession which has not been abandoned by him who claims such possession and uninterrupted possession means possession which has not been effectually broken by the possession of another person." Syl. pt. 6, in part, *State v. Davis*, 140 W. Va. 153, 83 S.E.2d 114 (1954).

**Per Curiam:**

In this case, Petitioner David A. Wallace appeals the January 20, 2012 order of the Circuit Court of Summers County that ruled after a bench trial that Respondents Joan Pack, Darlo Pack, Dello Pack, Don Pack, Delso Pack, and Minnie Harris acquired a 28-acre tract of land through adverse possession. This Court finds no error below, and we affirm the circuit court's order.

## I. FACTS

The Respondents, who are all siblings, sought to prove adverse possession of an approximately 28 acre[1] tract of land ("the disputed tract") in Summers County against Petitioner David A. Wallace.[2] In support of their claim, the respondents presented evidence in the bench trial below that they were children of Ralph Pack who originally purchased a large tract of land including the land at issue, and that the respondents grew up on this land in the years between 1926, when Ralph Pack purchased the land, and 1957, when the Pack family moved off of the land.[3] It is undisputed that the Pack

---

[1] To be exact, the disputed tract of land consisted of 27.682 acres.

[2] The circuit court found in its order that both the Pack tract and the Wallace tract have a common source of title, and this finding is not challenged in this appeal.

[3] The parties agree that the respondents claim under their parents by inheritance, and tacking is not disputed. *See* syl. pt. 5, *State v. Davis*, 140 W. Va. 153, 83 S.E.2d 114 (1954) ("In fixing the duration of possession, a person has the right to tack to his possession the possession of those under whom he claims.").

1

family's home was not on the disputed property but on land adjacent to the disputed property. The respondents testified at the trial below of various uses that their family made of the disputed property between 1926 and 1957. The disputed land was characterized as part flat and part hillside with portions of the hillside being very steep.

In its order which ruled that the respondents proved adverse possession of the land in question, the circuit court made the following findings:

> During the time [between 1926 and 1957] Ralph Pack and his family lived there they made their living from this land. It was a subsistence lifestyle; they enclosed portions of the land in question with fences, they had livestock on the property (including horses, cattle, hogs, sheep), they grew crops, (which included sorghum for molasses, corn, green beans), they had fruit trees, they picked berries on the property, they cut firewood (for heat and cooking), they cut posts and other timber, they operated a small sawmill known as a wedge mill, they cut timber from the property and produced wedges which they sold to the mines.[4] Basically they made their living from this property, producing pretty much everything that they used, (except salt and soda, which they purchased) from the property for the period of 1926 through 1956 or 1957.

> \* \* \* \*

> No one objected or raised any objection or claim to the property or interfered with the Pack family's occupancy of the entire property in any way during that period.
> . . . . Since that time [1957], the Pack family has moved away from the property. They have not lived on the property, but they've gone back to the property on a routine basis

---

[4] According to testimony at trial, the wedge machine or wedge mill cut timber into slats of a certain size, and these slats were used in coal mines to secure the tops of posts against the mine ceiling.

throughout the years since then. They have hunted on the property, that they've cut some timber products on the property, they have cut their own firewood on it from time to time. Although they no longer lived there, they still utilized the property, including using it for camping, for family gatherings, and other purposes that are consistent with a non-resident landowner. The Pack family never abandoned the property or moved away from it or took any action that would [be] inconsistent with the activities of an owner of the property.

(Footnote added.)

The circuit court further found that the respondents' testimony regarding the uses that the Pack family made of the land between 1926 and 1957 was credible and largely unchallenged. In addition, the circuit court found that the boundary line established by the respondents' expert's map between the parties' respective properties constituted the common boundary line. The circuit court concluded that to the extent that the respondents did not have superior record title, they established title to the property by their occupancy and use of it from 1926 through 1957. Specifically, the circuit court found that the uses of the property to which the respondents testified, including farming, cutting fire wood, hunting, timbering, and wedge cutting, were open, notorious, under color of title, hostile and existed for a period in excess of 10 years.

## II. STANDARD OF REVIEW

The primary issue in this case is whether there was insufficient evidence below to support the circuit court's finding of adverse possession. In *Brown v. Gobble*,

196 W. Va. 559, 474 S.E.2d 489 (1996), this Court set forth in a very thorough manner the standard of our review in an adverse possession case in which the finder of fact is the circuit court. We held in syllabus point 2 of *Brown* that "[t]he burden is upon the party who claims title by adverse possession to prove by clear and convincing evidence all elements essential to such title." Regarding appellate review in an adverse possession case, we explained

> that the standard of review for judging a sufficiency of evidence claim is not appellant friendly. Following a bench trial, the circuit court's findings, based on oral or documentary evidence, shall not be overturned unless clearly erroneous, and due regard shall be given to the opportunity of the circuit judge to evaluate the credibility of the witnesses. W. Va.R.Civ.P 52(a). Under this standard, if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse it, even though convinced that had we been sitting as the trier of fact, we would have weighed the evidence differently. We will disturb only those factual findings that strike us wrong with the "force of a five-week-old, unrefrigerated dead fish." *United States v. Markling*, 7 F.3d 1309, 1319 (7th Cir.1993), *cert. denied,* [514] U.S. [1010], 115 S.Ct. 1327, 131 L.Ed.2d 206 (1995). Nor is the scope of our review broadened because the burden of proof is clear and convincing. Indeed, the burden of proof has an impact only if the evidence is in equipoise. *See Director*, OWCP, *Dept. of Labor v. Greenwich Collieries*, 512 U.S. 267, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994).

*Brown*, 196 W. Va. at 563, 474 S.E.2d at 493. Nevertheless,

> [t]he deference accorded to a circuit court sitting as factfinder may evaporate if upon review of its findings the appellate court determines that: (1) a relevant factor that should have been given significant weight is not considered; (2) all proper factors, and no improper factors, are considered, but the circuit court in weighing those factors commits an

4

error of judgment; or (3) the circuit court failed to exercise
any discretion at all in issuing its decision.

Syl. pt. 1, *Id.*[5]


### III.  DISCUSSION

### A. Sufficiency of the Evidence

We begin our discussion by setting forth the well-established elements of

adverse possession:

> One who seeks to assert title to a tract of land under
> the doctrine of adverse possession must prove each of the
> following elements for the requisite statutory period: (1) That
> he has held the tract adversely or hostilely; (2) That the
> possession has been actual; (3) That it has been open and
> notorious (sometimes stated in the cases as visible and
> notorious); (4) That possession has been exclusive; (5) that
> possession has been continuous; (6) That possession has been
> under claim of title or color of title.

Syl. pt. 3, *Somon v. Murphy Fabrication Co.*, 160 W. Va. 84, 232 S.E.2d 524 (1977).

This Court also has held that "[a]ctual, open, notorious, exclusive and continuous adverse

possession of land for more than ten years, confers good legal title, enabling the owner to

maintain an action for unlawful entry and detainer against one who enters unlawfully."

Syl. pt. 2, *Harman v. Alt*, 69 W. Va. 287, 71 S.E. 709 (1911).

---

[5] Because this Court does not address the merits of the petitioner's second
assignment of error for the reasons explained below, we do not find it necessary to set
forth our standard for reviewing the second assignment of error.

The petitioner, in his first assignment of error, asserts that the circuit court was clearly wrong in finding that the Pack family's acts constituted adverse possession of the land at issue. According to the petitioner, there was insufficient evidence adduced at trial to show that the Pack family's possession of the disputed tract between 1926 and 1957 was continuous, open, and notorious in light of the fact that the disputed land consisted largely of wild lands. Essentially, the petitioner argues that it is undisputed that the land in question remained wild and uncultivated during the entire time that the respondents' family lived on the land. The petitioner indicates that the only evidence of the respondents' visible possession of the disputed land is the testimony that the disputed land was hunted by family and friends two times a year for many years, that the Pack family cut firewood for heating and cooking on the disputed land, that Ralph Pack placed his wedge machine on one portion of the land for 1 ½ to 2 years for the purposes of making wedges to sell to coal mines, and the Pack family used a flat portion of the land for picnics. The petitioner concludes that this evidence is insufficient to assert dominion and control over the wild lands at issue and indicates instead only occasional and sporadic use.

In support of this contention, the petitioner cites this Court's opinion in *Dustin v. Miller*, 180 W. Va. 186, 375 S.E.2d 818 (1988), in which the Court explained that one seeking to prove adverse possession must show that the adverse possession has been continued, consecutive and unbroken for the statutory period. Specifically, one must show that "unless the adverse claimant is so in possession of the land that he may at any

6

time be sued as trespasser the statute will not run in his favor; and although he may have taken actual possession, if he does not continue there so that he may be sued at any time as a trespasser during the prescriptive bar, he cannot rely on the statute of limitations." Dustin, 180 W. Va. at 190, 375 S.E.2d at 822, *quoting Core v. Faupel*, 24 W. Va. 238, 246–47 (1884). The petitioner also cites the Virginia case of *Craig-Giles Iron Co. v. Wickline*, 126 Va. 223, 101 S.E. 225 (1919), for the proposition that one cannot prove adverse possession of wild lands that remain completely in a state of nature, but must show some change in the condition of the land. The petitioner posits that the only time that the respondents could have been sued as trespassers was during the arguably 2-year period when the wedge machine was placed on a portion of the disputed property.

This Court rejects the petitioner's assertion of insufficient evidence to support the circuit court's order. We have explained that "[i]n the law of adverse possession, continuous possession means possession which has not been abandoned by him who claims such possession and uninterrupted possession means possession which has not been effactually broken by the possession of another person." Syl. pt. 6, in part, *State v. Davis*, 140 W. Va. 153, 83 S.E.2d 114 (1954). We have further explained that "[f]or 'actual' possession, there must be an exercising of dominion over the property and the quality of the acts of dominion are governed by the location, condition and reasonable uses which can be made of the property." *Somon*, 160 W. Va. at 90, 232 S.E.2d at 528 (citations omitted). Finally, "[f]or possession to be open and notorious, it is generally meant that the acts asserting dominion over the property must be of such quality to put a

7

person of ordinary prudence on notice of the fact that the disseisor is claiming the land as his own." *Id.*, 232 S.E.2d at 528 (citations omitted).

Our review of the respondents' trial testimony indicates that from 1926 until 1957, the Pack family made many uses of portions of the disputed land including enclosing portions of the land with fences, keeping livestock, placing a wedge mill in various locations, picking berries, picnicking, hunting, and cutting timber both to make wedges and for firewood. Also, there is no evidence that the Pack family abandoned the disputed land in the period from 1926 to 1957, or that the Pack family's possession was effectually broken by the possession of another person. In addition, the respondents presented undisputed testimony that they made every reasonable use of the disputed land in view of its condition and nature. Finally, it is significant to this Court that the circuit court below actually viewed the property at issue and was able to consider the testimony and exhibits at trial in the light of its first-hand knowledge of the property.

In sum, we find the circuit court's extensive account of the evidence plausible in light of our review of the record. Therefore, this Court is unable to conclude that the circuit court clearly erred in finding that the respondents established that their uses of the property were continuous, open, and notorious.[6]

---

[6] The petitioner also asserts error in the circuit court's exclusion of the testimony of David Huffman, a licensed land surveyor. The respondents originally retained Mr. Huffman as their expert surveyor but subsequently decided not to use him as a witness at

(continued . . .)

# IV. CONCLUSION

For the reasons stated above, this Court rejects the petitioner's complained of errors. Accordingly, we affirm the January 20, 2012, order of the Circuit Court of Summers County that ruled that the respondents acquired the subject 28-tract of land through adverse possession.

Affirmed.

---

trial. The petitioner then determined to call Mr. Huffman as his witness. However, the circuit court granted the respondent's motion to exclude Mr. Huffman's testimony based on the circuit court's finding that the respondents had established a confidential relationship with Mr. Huffman.

This Court does not find it necessary to address the merits of this assignment of error because even if the exclusion of Mr. Huffman's testimony was error, the petitioner has failed to allege or prove that the error was prejudicial. This Court previously has explained that to warrant reversal there must be both an error and injury to the petitioner. "[E]rror is prejudicial and ground for reversal only when it affects the final outcome and works adversely to a substantial right of the party assigning it." *Reed v. Wimmer*, 195 W. Va. 199, 209, 465 S.E.2d 199, 209 (1995). Under our long-established law,

> [w]hen evidence is excluded and the action of the court in excluding it is relied upon in the appellate court, it must appear on the record that the evidence rejected was or would have been relevant, material and important to make its rejection available as a ground for error.

Syl. pt. 5, *Maxwell v. Kent*, 49 W. Va. 542, 39 S.E. 174 (1901). Mr. Huffman's proposed testimony does not appear in the record and the petitioner fails to indicate how the exclusion of the testimony affected the final outcome of the trial or worked adversely to the petitioner's substantial rights. Therefore, this Court denies relief to the petitioner based on this assignment of error.

9