# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Charles Cobb and James Cobb,**
**Plaintiffs Below, Petitioners**

**vs)  No. 16-1212** (Jackson County 13-C-65)

**Jack L. Collins, Donna Kay Collins,**
**Ira Richard Kemplin, and Jane E. Stacy,**
**Defendants Below, Respondents**

**FILED**

**January 5, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners/plaintiffs below Charles Cobb and James Cobb, by counsel Paul A. Knisley and Kevin W. Hughart, appeal the Circuit Court of Jackson County's "Judgment Order," entered on November 30, 2016, following a bench trial in which the circuit court rejected petitioners' adverse possession claim in a property line dispute with respondents. Respondents/defendants below Jack L. Collins, Donna Kay Collins, Ira Richard Kemplin, and Jane E. Stacy, by counsel John E. Dorsey, filed a response. Petitioners filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

Petitioners Charles Cobb and James Cobb are brothers, each of whom own adjoining parcels of real property in Jackson County, West Virginia. Charles Cobb's property consists of approximately 53.4 acres and sits to the northeast of James Cobb's property, which consists of approximately 82.1 acres. Respondents Jack Collins and Donna Collins ("Collins"), own two parcels of property that are adjacent to petitioners' properties, which sit to the north and west of petitioners' properties. Respondents Ira Richard Kemplin and Jane E. Stacy ("Kemplin"), own a parcel of property that is adjacent to petitioners' properties, which sits to east and south of petitioners' properties. Petitioners state that they and/or their parents have owned the 53.4 and 82.1-acre parcels since the mid-1900s. Petitioners and Collins have been adjoiners for more than fifteen years. Petitioners and Kemplin have been adjoiners for more than twenty years. This appeal concerns the circuit court's rejection of petitioners' claim that they own part of respondents' properties by boundary line and adverse possession.

1

Petitioners' claims against Collins and Kemplin proceeded to a bench trial in the Circuit Court of Jackson County on August 30, 2016. The evidence at trial revealed the following: Petitioners commissioned two surveys in anticipation of this litigation. The first survey was completed by Fox Engineering in November of 2012. Petitioners disagreed with the results of this survey and commissioned a second survey by Kevin Shafer. Mr. Shafer completed his survey in April of 2014. Petitioners disagreed with the results of Mr. Shafer's survey as well. Mr. Shafer testified, however, that he revised his survey map in December of 2014 to include a green line to reflect the area that petitioners claimed to own by adverse possession. Mr. Shafer determined the location of the green line after he and Petitioner James Cobb, age 73 at the time of the trial, walked the property and Petitioner James Cobb identified the areas that he believed petitioners owned. Mr. Shafer then marked the location of the line with his GPS. Mr. Shafer's original map and his revised map, introduced as "Plaintiff's Exhibit 8," showed four to five areas marked by shading and hatch lines that depicted the areas in contention between the parties where Mr. Shafer's research was inconclusive as to ownership. According to the placement of the green line, petitioners contended that these areas were part of their property, regardless of what their deeds indicated. Importantly, there are no instruments of title that supported petitioners' contention that the green line was the actual property boundary.

Prior to petitioners initiating this action, Collins commissioned a survey by Randall Cline of BGH Surveying. Mr. Cline's survey was, in large part, consistent with the Fox Engineering Survey, but disagreed with Mr. Shafer's survey in some areas. Both Mr. Cline and Mr. Shafer testified at the bench trial and the circuit court admitted their respective surveys as evidence. Additionally, the court heard testimony from Petitioner James Cobb, Petitioner Charles Cobb, petitioners' brother Delmar Cobb, petitioners' sister Elsie Cobb, Respondent Richard Kemplin, and Respondent Jack Collins.

With respect to the boundary line dispute with Kemplin, the circuit court found that the line was clearly established by the Fox Engineering survey, the Shafer survey, petitioners' deed, and the Kemplin deed. The circuit court found that there were no legal instruments that disputed the survey findings. Thus, the court found that petitioners had no color of title to the area of the Kemplin property that they claimed as theirs. With respect to a small area of overlap between the properties shown on the Shafer survey, of which ownership was unclear, the court found that petitioners failed to prove that they own it.[1]

With respect to the boundary line dispute with Collins, Mr. Shafer could not definitively determine ownership of two of the four areas that he had marked with shading and hatch lines, marked as "X" and "Y" on his survey. Mr. Cline, however, testified that he determined that Collins owned all four areas in contention, including the areas marked as "X," "Y," "Z," and "C" on the Shafer survey. Based on the demonstrative exhibits and Mr. Cline's testimony as to his rationale for his conclusions, the circuit court found Mr. Cline's conclusions persuasive. The court, therefore, determined that these four areas were part of the Collins property.

---

[1] This small area of overlap is not the same as the shaded areas that petitioners claimed by adverse possession.

Despite the circuit court's findings and conclusions regarding the location of the boundary lines, petitioners still maintained that they owned these areas of contention by adverse possession. In support of their adverse possession claim, petitioners testified generally that they had exercised dominion over the disputed property "all their life;" they had a portion of the Kemplin property fenced to pasture cattle; and with respect to Collins, they fenced portions of the four disputed areas showed on the Shafer survey for farming and pasturing cattle, as well. Additionally, Delmar Cobb testified that they grew cucumbers on a portion of the Kemplin property; that they used an old dirt road on the Collins property; and that his and petitioners' father mowed a portion of the Collins property. Delmar Cobb, however, admitted that he was not aware of the location of the actual property lines and that much of his knowledge was based on hearsay. Lastly, Elsie Morris testified that as a child she used an old dirt path on the Collins property to walk to school, and that her family had claimed a portion of the Collins property as evidenced by a fence line "over the hill."

In response to petitioners' adverse possession claim, Kemplin disputed that petitioners pastured cattle on his property because the area they claimed to have used was unsuitable for that purpose. Kemplin also disputed that a fence line existed to confine any cattle. For his part, Collins also disputed petitioners' adverse possession claim. With respect to the Collins property, the circuit court found that, when petitioners timbered their property, they did not mark any of the timber in the disputed areas; that there was no fence line between the disputed areas or any continuous fence line that could contain cattle; that, in Collins' conversations with petitioners, petitioners did not clearly indicate that they knew where the boundaries were; that petitioners believed they always owned one of the disputed areas as marked on the Shafer survey, meaning they had no intent to claim it through adverse possession; and, that, until this litigation, petitioners never claimed as their own the area of the Collins property where Collins had installed a gate.

By "Judgment Order" entered on November 30, 2016, the circuit court, in relevant part, concluded that (1) petitioners had not proven by a preponderance of the evidence that they own, by any legal instrument, any portion of the Kemplin property; (2) petitioners had not proven by a preponderance of the evidence that they own, by any legal instrument, the tracts of property on the Shafer survey designated at tracts X, Y, Z, and C; (3) petitioners had not proven by clear and convincing evidence that they own any portion of the Kemplin property by adverse possession; and (4) petitioners had not proven by clear and convincing evidence that they own any portion of the Collins property by adverse possession. The circuit court further ordered that the true and correct boundary between petitioners and Kemplin was as established by the Fox Engineering and Shafer surveys; that, based on the Cline survey, the areas marked on the Shafer survey as X, Y, Z, and C, are owned by Collins; and that the Cline survey otherwise established the true and correct boundary between petitioner and Collins. It is from this order that petitioners appeal to this Court.

**Discussion**

On appeal, petitioners first challenge the circuit court's rejection of their adverse possession claims, arguing that they provided uncontradicted testimony establishing each of the elements of adverse possession. This Court has held that "[t]he finding of a trial court upon the

3

facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such finding." Syl., *Boarman v. Boarman*, 194 W. Va. 118, 459 S.E.2d 395 (1995) (citation omitted). Additionally, "[f]indings of fact by a trial court without a jury will not be set aside unless they are clearly wrong." Syl. Pt. 1, *McDaniel v. Romano*, 155 W. Va. 875, 190 S.E.2d 8 (1972). With respect to a claim of adverse possession, this Court has held as follows:

> 3. "One who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of the following elements for the requisite statutory period: (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title." Syl. pt. 3, *Somon v. Murphy Fabrication & Erection Co.,* 160 W.Va. 84, 232 S.E.2d 524 (1977).

> 4. "Actual, open, notorious, exclusive and continuous adverse possession of land for more than ten years, confers good legal title, enabling the owner to maintain an action for unlawful entry and detainer against one who enters unlawfully." Syl. pt. 2, *Harman v. Alt,* 69 W.Va. 287, 71 S.E. 709 (1911).

> 5. "In the law of adverse possession, continuous possession means possession which has not been abandoned by him who claims such possession and uninterrupted possession means possession which has not been effectually broken by the possession of another person." Syl. pt. 6, in part, *State v. Davis,* 140 W.Va. 153, 83 S.E.2d 114 (1954).

Syl. Pts. 3-5, *Wallace v. Pack*, 231 W. Va. 706, 749 S.E.2d 599 (2013). Additionally, the burden is upon the party who claims title by adverse possession to prove by clear and convincing evidence all elements essential to such title. *See Brown v. Brown,* 196 W.Va. 559, 474 S.E.2d 489 (1996).

With respect to the disputed areas on the Kemplin property, Petitioner James Cobb testified that, when he was young, his father allowed Kemplin's predecessor to have water rights for his cattle, and that he has claimed the area between the creek and "nine poles from the creek" his entire life. Petitioner Charles Cobb similarly testified that he and his family used that area their entire lives. Petitioners claimed that they fenced the area and kept it posted. They argue that Kemplin could not identify his property line until he had the property surveyed. With respect to the disputed areas on the Collins property, petitioners similarly testified they and their family worked the area their whole lives; kept it posted; ran cattle; cut hay off that land; and built fences. Similar to Kemplin, they argue that Collins did not know where his line was until it was surveyed.

The premise upon which petitioners' appeal is based is that their trial evidence was uncontradicted, and thus, the circuit court should have taken it as true. *See State ex rel. Canada*

4

*v. Hatfield*, 163 W. Va. 548, 549, 258 S.E.2d 440, 441 (1979) (citing *Smith v. Edward M. Rude Carrier Corp.*, 151 W.Va. 322, 151 S.E.2d 738 (1966)). However, based on our review of the record, the evidence was heavily disputed at trial by respondents. As respondents argue, Petitioner James Cobb's testimony is inconsistent with the testimony of his brother, Delmar Cobb. The area referred to by Delmar Cobb where his father allegedly planted cucumbers is within the area that belongs to petitioners, not Kemplin, a discrepancy Kemplin noted in his testimony. In rebutting the testimony that petitioners and their family ran cattle on the area in dispute, Kemplin also testified that the slope of that area rendered planting or running cattle impossible. Kemplin testified, "You could fall off of it is about all you could do." Additionally, according to Kemplin, he asked Petitioner Cobb twice where the property corner was, and Kemplin testified that Petitioner Cobb did not know. With regard to Collins, respondents argue that the green line that Mr. Shafer included on his survey map merely denotes the area petitioners alleged they own, and such allegation has no support in the legal instruments. Mr. Shafer inserted the line only after his original survey was adverse to petitioners. Therefore, contrary to petitioners' argument, respondents clearly disputed their adverse possession claims at trial.

Petitioners' final argument on appeal is that the circuit court neglected to rule on the issue of "claim of title" in conjunction with their adverse possession claim. The circuit court set forth the generally recognized difference between "claim of right" and "color of title" as follows: Claim of title has generally been held to mean nothing more than the disseisor enters upon the land with the intent to claim it as his own. *See Heavner v. Morgan,* 41 W. Va. 428, 23 S.E.874 (1895). Whereas, color of title imports that there is an instrument giving appearance of title, but which instrument in point of law does not. In other words, the title paper is found to be defective in conveying the legal title. *See Stover v. Stover,* 60 W. Va. 285, 54 S.E. 350 (1906). Petitioners argue, however, that the circuit court failed to rule on claim of title, which is one of the required elements of an adverse possession claim.

Petitioners' argument here has no merit. While the circuit court did not expressly reject petitioners' adverse possession claim based only on the concept of claim of title, the circuit court mentioned both color of title and claim of title in its findings. Moreover, it is apparent from the findings that the circuit court considered claim of title. Based on the trial evidence, the court determined that petitioners did not prove that they exercised dominion over all of the area that they claimed to own by adverse possession. Additionally, neither petitioners nor their witnesses could identify with any specificity the area petitioners were claiming or that petitioners' use was open and notorious. Therefore, even if we were to find that the circuit court failed to address claim of title, it is only one of six required elements of an adverse possession claim. Petitioners failed to prove the other elements of their claim, thus, their argument regarding claim of title fails. Based on our review, the circuit court's findings are neither clearly wrong, nor does the evidence "plainly and decidedly preponderate[] against" the circuit court's rejection of petitioners' adverse possession claim. Accordingly, we decline to disturb the circuit court's verdict.

For the foregoing reasons, we affirm the Circuit Court of Jackson County's November 30, 2016, "Judgment Order."

Affirmed.

**ISSUED:**  January 5, 2018

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

6