# CHARLESTON

## SANSOM *v.* WOLFORD *et al.*

Submitted June 1, 1906.    Decided October 23, 1906.

1. FRAUD—*Proof of.*
   When fraud is relied upon by a party to sustain his contention the fraud must be clearly established by proof. (p. 385.)

2. FRAUD—*When not Established.*
   A case in which the fraud is not so established. (p. 386.)·

Error to Circuit Court, Mingo County.

Bill by J. C. Sansom, guardian, against W. R. Wolford *et al.* Decree for defendant, and plaintiff appeals.

*Affirmed.*

SHEPPARD, GOODYKOOTZ & SCHERR, for appellant.

MARCUM & MARCUM, for appellees.

MCWHORTER, PRESIDENT:

J. C. Sansom purchased from Missouria Murphy a lot of

about one-fourth acre of land near the town of Devon, Mingo county, and caused the same to be conveyed to his youngest son Riley Sansom, who was some thirteen years of age. In 1898 said J. C. Sansom, as guardian of Riley Sansom, proceeded in the circuit court of Mingo county to sell the said land for the benefit of said Riley Sansom. On the 17th day of January, 1899, the court decreed a sale of said lot and appointed John L. Stafford a special commissioner to make sale thereof. Said commissioner sold the same at public auction when W. R. Wolford became the purchaser of the same at the price of $211.00, which sale was confirmed by decree entered on May 16, 1899, and a deed therefor directed to be made by the said Stafford, who was appointed a commissioner for that purpose, to the said purchaser, which deed was duly executed.

At the April rules 1904 the said Riley Sansom, who sued by his next friend, Ezekiel Blankenship, filed his bill in equity in the circuit court of Mingo county against said W. R. Wolford and J. C. Sansom in his own right and as guardian of said Riley Sansom, which bill is in the nature of a bill of review, alleging that the suit for the sale of said lot of the infant was instituted by said Sansom for the purpose of carrying out a contract that he had made before that time with said Wolford for the purchase of said land; that said Wolford had contracted for the land for about $700.00 and had paid about $100.00 thereon and finding that Sansom could not make him good title that the defendants Wolford and Sansom combined together to have the said suit instituted for the purpose of obtaining said title and carrying out the contract; that when said land had been sold and confirmed to the said Wolford at the price of $211.00 Wolford refused to carry out the contract made with Sansom and to pay the additional money due thereunder and contended that he had a right to hold said land at the price purchased at the sale regardless of his contract made with said Sansom; that the said Wolford fraudulently entered into said arrangement for the purpose of procuring the title at a wholly inadequate price; that he had agreed to bid the full amount of the price agreed upon between them, but refused to do so and fraudulently procured the affidavits of two parties for the purpose of getting said sale confirmed to him at said in-

adequate price; that a portion of said money for which the land was sold was improperly used in the payment of illegal costs and expenses of the sale and that finally there was left of said sum only about $163.00, which the said Sansom refused to receive as plaintiff's guardian as the full payment of the purchase price for said land and that said money was still under the control of the special commissioner and no part of it had been paid over to his guardian nor used in his care, education, support and maintenance; that said proceedings were irregular in many respects which would render the same void, and that by reason of the fraudulent conduct of the defendants, plaintiff was entitled to have the sale set aside and thereby re-invested with his land; and prayed that the proceedings in said suit be declared null and void and fraudulent and that the sale by said commissioner to Wolford be set aside and held for naught and for general relief.

Defendant Wolford filed his demurrer to the bill, which was overruled, and he then filed his answer denying all fraud or fraudulent intent on his part and averring that he had purchased the land before the proceedings entered to sell it and had paid on account of the purchase money $247.00, but expressly denied that he agreed or was to pay $700.00 as alleged in plaintiff's bill, and finding that he could not get a good title from the guardian except by the proceedings of the court that the same were instituted that a sale might be had to enable him to receive a good title; and averring that $211.00 under the circumstances was a fair cash price for the land, and expressly denied that he had any contract, arrangement or agreement with said Sansom as guardian for Riley Sansom to pay any further sum for the lot except the $211.00 that he bid for the lot at the sale and the $247.00 that he had theretofore paid for the same and any and all allegations in the plaintiff's bill alleging any such understanding or agreement were absolutely false and untrue; and denied that he had fraudulently procured the affidavits of two parties for the purpose of getting said sale confirmed at an inadequate price; he admitted that it was true he procured the affidavits of Taylor and Haubert by which it was shown that said land was not worth exceeding $200.00, excluding the buildings recently erected thereon by Wolford, but denied that said affidavits were obtained by him through fraud or misrepre-

sentation, but were obtained from parties who were well ac-
quainted with the land and its value for the purpose of show-
ing to the court that the $211.00 bid by respondent was a
fair and adequate cash price for the same; that he was not
advised as to what disposition was made of the $211.00 paid
by him to commissioner Stafford as to whether the amount
was improperly used in the payment of illegal costs and ex-
penses as alleged, but averred that it was disbursed under
the orders and directions of the circuit court of Mingo coun-
ty and that the same was properly disbursed and payed out;
denied that the proceedings under which the sale was had
were irregular, but averred on the contrary that they were
regular and that the sale to him and the confirmation and the
conveyance of said lot to respondent by J. L. Stafford, com-
missioner, vested the legal title to said lot in respondent, and
for the purpose of showing the regularity of the proceed-
ings in which the lot was sold referred to said cause and
made the same and the orders and decrees therein a part of
his answer and asked that the same be read therewith; and
averred that he had been in the absolute and notorious pos-
session of said land for ——— years and had paid all taxes
due thereon and had made valuable improvements on said lot
amounting to $500.00 or $600.00.

Depositions were taken and filed in said cause by both
plaintiff and defendant. The cause was heard on the 22nd.
day of September, 1904, upon the bill and exhibits and an-
swer with general replication thereto; and the depositions
taken and filed in the cause, in consideration whereof it was
the opinion of the court that the plaintiff was not entitled to
the relief prayed for and accordingly decreed the dismissal of
his bill giving the defendant Wolford a decree for his costs.
From which decree plaintiff appealed.

The evidence shows that the value of the ground ordinarily
was about $100.00 to $125.00; that shortly before the institu-
tion of the proceedings to sell it for the benefit of the infant,
the plaintiff here, a timber operation had been started to get
the timber out of Knox creek and it had to be taken through
a portion of this property for the purpose of being loaded in
the cars on the railroad, which fact enhanced the value to
something like $600.00. Several of the witnesses testified
that it would likely sell for that amount in the proceedings

then pending, that the "timber job" would last some two or three years and that when it was done the.land would sell for about $100.00, or in other words be worth about what it was before, that the work of getting out the timber had given the land an enhanced temporary value.   One witness, H. W. Preece, on behalf of plaintiff stated that when the sale was made by the commissioner, witness and one Lee Baker had offered an upset bid; that Baker offered $200.00 for about thirty feet of it and witness offered $240.00 or $250.00 for the balance as an upset bid, but the commissioner would not do anything.   This upset bid, if offered, was not equal to what Wolford was paying for the property, he had already paid to the guardian, J. C. Sansom, according to the pleadings and the proof $247.00 before the proceedings were taken and then had bid $211.00 at the sale, making in all $458.00 which he was paying for the property, when the defendant testified that he had agreed with the guardian, Sansom, before the proceedings were instituted, to purchase the property at the price of $450.00.   In support of the motion to confirm the sale the affidavits of two persons. G. W. Taylor and P. J. L. Haubert, are filed, who testified that they were well acquainted with the lot sold and that it was not worth exceeding $200.00 exclusive of the buildings then recently erected thereon by Wolford and that such sum would be a full cash value for same.   This Court can know nothing from the record what manner of men these affiants are.   Counsel for appellant refer to the affiants, Haubert and Taylor, in their brief as knowing "nothing about the value of real estate, and. do not pretend to have any such knowledge.   These two unknown men undertake to represent to the court that some of this land lay 'under the bank' and 'is frequently overflowed' and after deducting the value of the buildings recently erected by Wolford the land is not worth exceeding $200.00."   While on the other hand counsel for appellee in their brief make the following comment upon such reference:   "We were surprised to find in the brief of counsel for the appellant a reference to Taylor and Haubert as 'unknown' persons and strangers.   G. W. Taylor was the owner of large tracts of valuable land in Mingo county, had been sheriff of the county, lived within a few miles of the lot in question and was well quali fied to speak as to the value of it.   Haubert was a merchant,

land owner and timber dealer, living within three hundred feet of the lot and knew it and its value well. And these facts as to the qualifications of these persons to judge of values of land were well known to the judge of the circuit court of Mingo county.'' These affiants state under oath that they were well acquainted with the lot in question and there is nothing in the record to dispute that fact, and there is no evidence to prove the allegation of the bill that these affidavits were fraudulently procured by said Wolford ''for the purpose of getting said sale confirmed to him at said inadequate price.'' When Wolford purchased the property he went into possession thereof and made considerable improvements on and has had continuous possession of it ever since. The attempt to open up and set aside the sale under the proceedings taken by Sansom, guardian, to sell the property, in which it was purchased by Wolford, is based upon fraud practiced by the defendants, Wolford and Sansom, guardian, but plaintiff has failed in his proofs. In *College Trustees* v. *Blair et al.*, 45 W. Va. 812 (32 S. E. 203), it is held (Syl., pt. 1). ''The *onus probandi* is on him who alleges fraud, and, if the fraud is not strictly and clearly proved as it is alleged, relief cannot be granted;'' and point 2: ''To entitle a plaintiff to relief in equity on the ground of mistake or fraud, the mistake or fraud must be clearly established.'' And in *Clay* v. *Deskins*, 36 W. Va. 350 (15 S. E. 85): ''The rule of law is that he who alleges fraud must prove it.'' There is no principle of law better settled than that fraud charged must be clearly proved before a court of equity will grant relief on that ground. It is contended by counsel for appellant that Wolford was a party to the proceedings to sell the infant's property, having made himself a party thereto by filing his petition to have the sale confirmed and introducing the affidavits of Haubert and Taylor in support of his petition, and therefore is not protected in his purchase under section 8, chapter 132, Code, and cite *Dunfee* v. *Childs*, 45 W. Va. 155. Wolford testifies that he had nothing to do with the bringing of the suit to sell the land and that ''the first he knew anything about the suit to sell was when notices were stuck up on Jim Reynold's store that the property was to be sold at the Court House door to the highest bidder.'' It matters not what the property was worth or what

Wolford was doing with it, or getting for it in the way of rents, issues or profits, at the time or since this suit was brought, the question is, Was he a *bona fide* purchaser in good faith when the property was sold under the decree of the court? If so, he is entitled to be protected in his purchase. There is some conflict in the testimony; the fraud and conspiracy charges are by no means clearly proven, we see no reason for reversing the finding and decree of circuit court and the decree is therefore affirmed.

*Affirmed.*