L. M. LaFollette, Jr. *v.* Elmer Nelson, *Clerk, etc., et al.*

(No. 7586)

Submitted March 1, 1933.    Decided June 9, 1933.

(Rehearing denied August 1, 1933)

*Blue, Dayton & Campbell* and *Wm. F. Blue,* for relator.

*A. W. Garnett,* and *Homer A. Holt,* Attorney General, and *Ira J. Partlow,* Assistant Attorney General, for respondents.

Kenna, Judge:

L. M. LaFollette, Jr., became the purchaser of a 1/35 undivided interest in a tract of 3,082 acres in Sherman District, Boone County, assessed in the name of John Lewis Cochran, at the sale for taxes delinquent for the years 1929 and 1930. Upon applying to the clerk of the county court of Boone County for the notice required by law to be given to the former owner, his vendees or assignees, and for a tax deed, upon the theory that chapter 17, Acts of 1932 (Extra Sess.), extending the time for redemption in such case is unconstitutional in so far as it applies to individual purchasers at tax sales held before that act became effective, both requests were refused. The tax purchaser now seeks a peremptory writ of mandamus to compel the clerk to perform both ministerial

duties. Elmer Nelson, clerk of the county court of Boone County, appears in resistance and urges (1) that mandamus is not a proper remedy; (2) that chapter 17, Acts of 1932, is constitutional and hence the purchaser's right to give notice and to a tax deed is not perfected, and (3) that the assessments of undivided interests are invalid because unconstitutional.

We have held in the case of *Fred L. Lemley* v. *John S. Phillips, Clerk,* 169 S. E. 789, decided at this term, that mandamus is the proper remedy where the clerk of the county court has refused both to give the statutory notice and, after that, in a proper case, to execute a tax deed.

We have held in the case of *Milkint* v. *McNeeley, Clerk,* 169 S. E. 790 also decided at this term, that chapter 17, Acts of 1932, (Extraord. Sess.), in so far it applies to individual purchasers at tax sales held before the act became effective, is unconstitutional.

The next point urged against the granting of relator's prayer for a peremptory writ of mandamus is that his right to a tax deed is based upon the tax purchase of an undivided interest in a tract of land. Chapter 53 of the Acts of 1931 provides expressly for the assessment of undivided interests in land. We are urged to hold this statute unconstitutional as being in contravention to sections 3 and 6 of Article XIII of the Constitution. Section 3 provides for the vesting of the state's title to forfeited land in ''any person (other than those for whose default the same may have been forfeited or returned delinquent, their heirs or devisees), for so much thereof as such person has, or shall have had actual continuous possession of, under color or claim of title for ten years, and who, or those under whom he claims, shall have paid the State taxes thereon for any five years during such possession; * * *.'' The section then goes on to describe two other classes in whom the state's forfeited title shall vest, each class being conditioned upon the absence of any person falling within the previous class or classes named. This section of the constitution contains several provisions which seem to us to exclude the idea of the assessment of undivided interests in land. In the first place, lands held in undivided interests and so assessed would never become entirely forfeited for either non-payment or non-entry until each undivided interest separately reached one

or the other condition. Again, the constitution clearly contemplates that any title to land become forfeited to the state may be gotten out of the state by possession and the payment of taxes. This could not possibly be done in the case of a forfeited undivided interest if there were other undivided interests upon which the taxes had been regularly assessed and paid. Again, this section deals with the forfeiture and transfer of "all titles to land in this state". The language is sweeping and comprehensive. It does not deal with a part of the title or with undivided interests. A further consideration is the difficulty, inconvenience and complication of the state procuring its tax money levied against land if it must pursue and sell what in some instances will amount to almost infinitesimal undivided interests therein. It is urged, too, that this statute contravenes the substantial meaning of section 6 of this same Article. The reasons for this contention are substantially the same as those urged under section 3 and need not be repeated.

In *Toothman* v. *Courtney*, 62 W. Va. 167, at page 182, 58 S. E. 915, 921, Judge Poffenbarger deals with this question on the basis of both our statutory and constitutional provisions. He apparently bases his holding in that case, to the effect that the assessment of an undivided interest is invalid, upon both the statutory and constitutional provisions. His language may be quoted with benefit:

> "Under our system of taxation, land itself, and not a mere estate or interest in it, is a primary subject of taxation, and the remedy for enforcement of payment is directly against the land as well as its owners. The statute creates a lien upon all land for the taxes thereon, which may be enforced by a suit in equity. It also provides for sale of the land, for nonpayment of the taxes thereon, and, for failure to cause land to be charged with the taxes it ought to pay, for a period of five years, the title is forfeited and becomes vested in the state, by constitutional and statutory provisions. These provisions deal with the corpus and complete title to the land. In so far as they are constitutional, they are of great dignity, and may be considered as founded upon most weighty reasons of public policy. Such of them as are statutory must be deemed to be in execution of the con-

stitutional plan of taxation, and highly impregnated with its spirit. Good reason for adopting the plan is found in the consequences which would flow from general use of the departure now under consideration. If fifty persons, owning equal undivided shares of a tract of land, were separately charged with their respective interests on the land book, the state's lien for taxes would be severed into fifty parts, and fifty suits might be maintained, and possibly would be necessary, for collection of taxes on the tract. It would require fifty separate and distinct sheriff's sales for delinquency, and, if made to the state, for want of private bidders, she would be compelled to make fifty purchases instead of one, under-going multiplied risks of complication, delay and loss, and the state would find herself, in thousands of instances, in a relation of co-tenancy with private persons, in the ownership of land, not only as the results of such sales, but also of forfeiting for non-entry. It would not only bring, upon the state, embarrassment in the enforcement of her constitutional rights and powers, but, upon the people, interminable confusion of land titles, contrary to the spirit of the constitution, which, by its system of forfeiture and transfer, endeavors to prevent and eradicate uncertainty of such titles."

We therefore hold that chapter 53 of the Acts of 1931, permitting the separate assessment of undivided interests in land is unconstitutional and void. It necessarily follows that since relator's tax purchase is based on an assessment of an undivided interest under that statute, which is an invalid assessment in the light of our holding the statute unconstitutional, he is not entitled to a tax deed. Therefore, the writ of mandamus must be denied.

It is, perhaps, needless to add that this decision has no bearing upon the situation as it affects the separate assessment of whole estates in land, such as oil and gas, timber, coal, etc.

*Writ denied.*