STATE OF WEST VIRGINIA

*v.*

GRACE DAVIS, *et al.*

(No. 10627)

Submitted April 27, 1954. Decided July 27, 1954.

*Chas. E. Mahan, O. L. Hedrick, C. T. Ross, Jr.,* for appellant.

*Ned H. Ragland, Floyd M. Sayre, G. Berk Lynch,* for appellee.

HAYMOND, Judge:

This suit in equity was instituted in the Circuit Court of Raleigh County in June, 1950, by the plaintiff, the State of West Virginia, by the Deputy Commissioner of Forfeited and Delinquent Lands for Raleigh County, West Virginia, against Grace Davis and several other persons and corporations, including the defendant Raleigh County Land Company, a corporation, as the former owners of certain tracts of delinquent and forfeited lands which had been forfeited to the State and had become irredeemable for the nonpayment of taxes assessed against them, to sell such lands for the benefit of the school fund pursuant to Article 4, Chapter 160, Acts of the Legislature, 1947, Regular Session, as amended by Article 4, Chapter 133, Acts of the Legislature, 1949, Regular Session, and Article 4, Chapter 134, Acts of the Legislature, 1949, Regular Session. Among the lands proceeded against and sought to be sold in this proceeding is a tract of 412.83 acres in fee, except the oil and the gas in and underlying it, located on Laurel Branch, in Town District, Raleigh County, formerly owned by the defendant Raleigh County Land Company, designated in the bill of complaint as certificate No. 1267, which was sold to the State in the year 1935 for the nonpayment of taxes assessed against it for the year 1934 and is the subject of this litigation. The amount of the unpaid taxes, interest and fees, at the time of the institution of this suit, was $2,935.99.

This suit was matured for hearing by the usual procedure and on August 28, 1950, a decree of sale of the lands involved, including the tract of 412.83 acres formerly owned by the defendant Raleigh County Land Company, was entered in the case. Pursuant to the decree of sale, the tract of 412.83 acres was sold by the Deputy Commissioner of Forfeited and Delinquent Lands for Raleigh County on September 16, 1950, at public auction to the highest bidder for cash and at the sale the defendants Gus Fotos and Bertha Fotos, herein referred to as the purchasers, purchased the tract for the sum of $2,050 which was paid to and is still retained by the sheriff of Raleigh County. On October 10, 1950, the deputy commissioner filed his report of the lands sold by him including the sale of the tract of 412.83 acres purchased by the Fotos; and the sale of that tract was not confirmed until the entry of the final decree on July 15, 1953.

Shortly after the sale of the tract of 412.83 acres on September 16, 1950, and some time later that day, the defendant G. C. Hedrick, herein referred to as the petitioner, who was not impleaded as an original defendant, but who claims to be owner and possessor of the tract of 412.83 acres, was informed of the sale and subsequently, pending the entry of a decree confirming the sale, intervened and was made a party to this suit. Upon various pleadings, consisting of a petition and a supplemental and amended petition and a special reply filed by the petitioner G. C. Hedrick, answers filed by the purchasers Gus Fotos and Bertha Fotos, an application filed by Anthony J. Sparacino, Deputy Commissioner of Forfeited and Delinquent Lands of Raleigh County, to dismiss the tract of 412.83 acres from this suit on the ground that it was improperly proceeded against, made at the instance of the Auditor of this State who later requested that the question presented by the application be determined in the suit, and an answer filed by G. C. Hedrick, Thomas A. Hedrick, Jane H. Hedrick, Clarence W. Meadows and Nancy M. Meadows, the persons filing those respective pleadings and the Public Land Corporation of West Vir-

ginia, a corporation, were made parties defendant in this suit. By the foregoing pleadings the conflicting claims of the petitioner G. C. Hedrick, who asserts that he owns and possesses the tract of 412.83 acres and of the purchasers Gus Fotos and Bertha Fotos, who insist that they are entitled to a decree confirming the sale by the deputy commissioner and a deed for that tract of land, were presented to the circuit court.

By decree entered April 5, 1951, the cause was referred to a commissioner in chancery to determine and report upon the matters in issue between the petitioner and the purchasers who, after considering the testimony of numerous witnesses and certain exhibits introduced in evidence, filed his report on March 11, 1952.

The petitioner and the purchasers filed numerous exceptions to the report of the commissioner in chancery, and by decree entered November 15, 1952, upon motion of the purchasers, the Circuit Court of Raleigh County, a special judge acting in lieu of the regular judge who died before the entry of the decree, removed this case to the Circuit Court of Jackson County for final decision.

By final decree entered July 15, 1953, the Circuit Court of Jackson County denied the application of the deputy commissioner to dismiss the tract of 412.83 acres from this suit and dismissed the application; sustained the exceptions of the purchasers, and overruled the exceptions of the petitioner, to the report of the commissioner in chancery; dismissed the petition and the supplemental and amended petition of the petitioner G. C. Hedrick at his cost; and held that the petitioner G. C. Hedrick had no title or interest in and no right to the tract of 412.83 acres; that it was subject to unpaid taxes which were not forgiven; that the sale of the tract of 412.83 acres by the deputy commissioner be confirmed and a deed conveying the fee in the tract of 412.83 acres, except the oil and the gas, be made by the deputy commissioner to the purchasers; that the deeds under which the petitioner claimed to own the tract of 412.83 acres were null and

void as to it and should be cancelled and set aside as a cloud upon the title of the purchasers; that the purchasers were entitled to immediate possession of the tract of 412.83 acres; that the petitioner deliver immediate possession to the purchasers; and that this cause be certified and returned to the Circuit Court of Raleigh County. From this decree this Court granted this appeal upon the application of the petitioner G. C. Hedrick.

For some time prior to the year 1934 Raleigh County Land Company was the owner of the tract of 412.83 acres which was returned delinquent for the nonpayment of taxes assessed against it for that year. It was sold by the sheriff in December, 1935, purchased for the State of West Virginia, and became irredeemable. By deed dated December 9, 1938, recorded December 14, 1938, in the office of the clerk of the County Court of Raleigh County, Raleigh County Land Company conveyed and released all its right, title and interest in and to that tract and certain other lands to the State of West Virginia and waived its right to redeem any property affected by the deed which had been or would be sold for the nonpayment of taxes. This deed was delivered to the Commissioner of Agriculture of West Virginia as secretary of the Public Land Corporation of this State and remained in his possession. That agency of the State was created by Chapter 54, Acts of the Legislature, 1933, Extraordinary Session, for the purpose of acquiring the title of the State in public lands to which the title is or may be absolutely vested in the State by any law governing the title to such lands; and the statute provides that the members of the corporation shall be the Governor, as chairman, the Secretary of Agriculture, as secretary, the Auditor, the Attorney General, and the Director of the engineering experiment station at West Virginia University.

On November 27, 1942, Clarence W. Meadows, then Judge of the Circuit Court of Raleigh County and a former Attorney General of this State, and as such a former member of the Public Land Corporation, purchased the tract of 412.83 acres at private sale. Though two or three

other persons were apparently interested in the purchase of the tract and submitted bids by letters, the land was not advertised for sale and no public sale was conducted. Meadows became the purchaser for the sum of $1,000 and paid that amount to the State which still retains it. The sale was negotiated and approved by the corporation at a meeting held November 27, 1942, in the office of the then Attorney General, William S. Wysong. By deed dated December 9, 1942, signed by Matthew M. Neely, then Governor, and J. B. McLaughlin, Commissioner of Agriculture, the Public Land Corporation conveyed the tract of 412.83 acres to Meadows for the recited consideration of $1,000 and that deed was recorded in the office of the clerk of the County Court of Raleigh County on March 9, 1943. Edgar B. Sims, the Auditor, and a member of the corporation, who was present when the sale was authorized and directed, testified that there were other offers for the purchase of the land and that he considered the action of the corporation in authorizing and directing the sale to Meadows to be "in the best interest of the State" and that there was no concealment, fraud, "or anything underhand about this transaction," of which he had knowledge.

The petitioner G. C. Hedrick furnished one half of the purchase price of $1,000 and he and Meadows each paid one half of the taxes assessed against the land for the years 1944 to 1950, inclusive. By deed dated March 15, 1943, Meadows and his wife conveyed a one half interest in the tract to Thomas A. Hedrick, a son of the petitioner G. C. Hedrick, for the recited cash consideration of $500; and by deed dated February 20, 1950, Meadows and his wife conveyed the remaining one half interest in the tract of 412.83 acres, and certain timber on five other tracts of land, for the recited cash consideration of $1,500, to the petitioner G. C. Hedrick. By deed dated March 8, 1950, Thomas A. Hedrick and his wife conveyed the one half interest which he had received from Meadows to the petitioner G. C. Hedrick who, from that time held the tract of 412.83 acres in its entirety, except the oil and the

gas, under the deeds to him from Meadows and Thomas A. Hedrick. The deed from the Public Land Corporation to Meadows referred to a prior deed from Rowland Land Company to Raleigh County Land Company which contained a particular description of the tract of 412.83 acres, and the other deeds contained a reference to the Rowland Land Company deed or to the Public Land Corporation deed for a description of the tract of 412.83 acres. All these deeds were promptly and properly admitted to record. For each year during the period 1944 to 1950, inclusive, the tract of 412.83 acres was entered for taxation on the land books of Raleigh County in the name of Thomas A. Hedrick and others, and the taxes for those years were paid by Meadows and the petitioner G. C. Hedrick. None of the taxes which had accrued against the tract for the years 1936 to 1943, inclusive, has been paid to the State.

The petitioner G. C. Hedrick testified that he and Meadows "arranged" the purchase by Meadows of the tract of 412.83 acres from the State and that he paid one half of the purchase money for his son Thomas A. Hedrick who at the time of the purchase was in training for service in the Navy in World War II; that he also paid Meadows the sum of $1,500 for the one half interest in the tract of 412.83 acres and the timber on other lands conveyed to him by Meadows and his wife by the deed dated February 20, 1950; and that he "took charge of the property" in behalf of his son in the year 1943; that shortly after the purchase of the land, he rented a small house on the land to a tenant named Painter who occupied it for approximately six months to one year and that during the time that Painter occupied the house he cultivated a garden near it and then moved away; that the house was not rented after Painter ceased to occupy it and was subsequently torn down by unknown trespassers; that in 1943 he entered into a verbal contract with a man named Oren Miller, who resided in the neighborhood of the 412.83 acre tract, by which he and his son, Joe Miller, were given the right to use the entire tract of 412.83 acres to pasture cattle owned by each of them and to go upon

the land at any time during the continuance of the contract, and by which the Millers were to look after the land and to report to the petitioner any fires or trespasses which should occur upon it; that the Millers used the land for that purpose for a period of several months during each year and went upon it at other times when they were not using it for pasture while the arrangement continued; that in connection with their use of the land for the purpose of pasturing their cattle the Millers constructed about three hundred feet of fence on land near the tract of 412.83 acres; that the contract with Miller continued until 1950 when the petitioner entered into a contract with Calvin Goodman and B. L. Goodman, partners in the business of cutting timber, for the purchase and the removal by them of timber on the tract; that the Goodmans entered upon the land in February, 1950, and continuously engaged in removing the timber until after the institution of this suit; that the petitioner caused the tract to be posted with notices against trespassing at several places on the land; that these notices, or some of them, were continuously on the tract since the year 1943; that during the time he has been in charge of the tract of 412.83 acres the petitioner employed a man named Sweeney and an assistant named Stover to inspect the tract, which is uncultivated and unimproved woodland, to determine the amount of timber on it and to locate the corners of its boundaries and that this work was performed during a period of approximately six months; that the petitioner made frequent visits to the land to protect it and to keep in touch with existing conditions; that he altered and improved a road which led to or near the tract of 412.83 acres and in 1945 purchased an adjoining tract of land for use in connection with the development of the tract of 412.83 acres; and that by reason of the foregoing acts of the petitioner it was generally known by people in that neighborhood that he claimed to own the land or acted as the representative of its owner.

The Millers corroborated the testimony of the petitioner concerning the contract between them, the use of the

land by the Millers as pasture for their cattle and in going upon it at other times, and the construction of the fence by them in connection with their use of the land.

Some of the witnesses produced in behalf of the Fotos testified that the road which was changed or improved by the petitioner did not extend to or go upon any part of the tract of 412.83 acres; and several witnesses produced in their behalf, who were familiar with the tract of 412.83 acres and had been upon it on various isolated occasions, testified that they had not seen cattle grazing on the land or notices against trespassing posted on it at any time.

Upon the evidence submitted to the commissioner he made, among others, these findings: (1) That the petitioner G. C. Hedrick, after the sale of the tract of 412.83 acres to Meadows, had actual and continuous possession of the tract during the period 1943 to 1950; (2) that the taxes assessed upon the tract for the years 1944 to 1950, inclusive, had been paid; and (3) that the deed from the Public Land Corporation to Meadows dated December 9, 1942, constituted color of title to the tract of 412.83 acres. The Circuit Court of Jackson County concluded, as indicated by a memorandum filed in connection with the entry of the final decree and incorporated in the record, that the deed from the Public Land Corporation to Meadows was void; that it did not constitute color of title; and that the acts of possession relied on by the petitioner G. C. Hedrick did not constitute actual and continuous possession of the tract of 412.83 acres.

Though the petitioner assigns numerous errors in the final decree of July 15, 1953, the controlling question presented by his assignments of error is whether the petitioner, as successor in title of Clarence W. Meadows, the grantee in the deed to him by the Public Land Corporation, is the owner of the tract of 412.83 acres by transfer of title under Article XIII, Section 3, of the Constitution of this State.

The petitioner contends: (1) That the deed dated December 9, 1942, from the Public Land Corporation to

Clarence W. Meadows, was a valid deed and conveyed the title of the State in the tract of 412.83 acres to the grantee in that deed; (2) that, if that deed is not a valid conveyance of the title of the State, it constitutes color of title within the meaning of the foregoing constitutional provision; and (3) that the petitioner, as successor grantee, has had actual continuous possession of the tract of 412.83 acres under color of title for five successive years and has paid all taxes charged against the tract for that period of time. The petitioner also contends that if he does not have title to the tract of 412.83 acres under the foregoing constitutional provision, he possesses an interest in the tract which entitles him to redeem it in this suit and that, the State having been paid the equivalent of all taxes charged or chargeable against the tract of 412.83 acres, it is not subject to sale in this suit for the nonpayment of taxes.

On the contrary the purchasers, the Fotos, insist in substance (1) That there has been no constitutional transfer of the title to the tract of 412.83 acres of land to the petitioner; (2) that the sale of the tract of 412.83 acres by the Public Land Corporation was invalid and the deed by it to Meadows was void and transferred no title in the land to him; (3) that, as Meadows and the petitioner knew or should have known that the deed of the Public Land Corporation was invalid, it did not constitute color of title to the land sought to be conveyed; (4) that the acts of possession by the petitioner did not constitute actual continuous possession of the land; (5) that the petitioner and his predecessors, as purported assignees of the former owner, Raleigh County Land Company, were not entitled to purchase the land from the State at tax sale; (6) that the petitioner is not entitled to redeem the land in this suit; (7) that, as the taxes against the land for the years 1936 to 1943, inclusive, have not been paid or forgiven, the land is subject to sale in this suit; and (8) that the State is not estopped by the invalid deed of the Public Land Corporation to Meadows.

The primary and controlling question for decision is

whether the petitioner, as a claimant under color of title and by actual continuous possession and the payment of taxes for five successive years, has acquired title to the tract of 412.83 acres by transfer under the last clause of Article XIII, Section 3, of the Constitution of this State. If he has acquired title by virtue of that provision the other questions presented become unimportant and need not be considered or discussed.

Article XIII, Section 3, of the Constitution, many times considered and applied by this Court, provides, to the extent here pertinent, that "All title to lands in this State heretofore forfeited, or treated as forfeited, waste and unappropriated, or escheated to the State of Virginia, or this State, or purchased by either of said States at sales made for the nonpayment of taxes and become irredeemable, or hereafter forfeited, or treated as forfeited, or escheated to this State, or purchased by it and become irredeemable, not redeemed, released or otherwise disposed of, vested and remaining in this State, shall be, and is hereby transferred to, and vested in any person (other than those for whose default the same may have been forfeited or returned delinquent, their heirs or devisees), * * * for so much of said land as such person shall have had claim to and actual continuous possession of, under color of title for any five successive years after the year 1865, and have paid all State taxes charged or chargeable thereon for said period." This section applies to all title to lands in this State heretofore forfeited, or purchased by the State at sales made for the nonpayment of taxes, and become irredeemable, and its language is broad and comprehensive. *LaFollette* v. *Nelson,* 113 W. Va. 906, 170 S. E. 168. Under the quoted constitutional provision, a person (other than the person or persons for whose default land has been forfeited or returned delinquent, their heirs or devisees) who claims, and has color of title to, land which has been sold for the nonpayment of taxes, purchased by the State and not redeemed, and who has had actual continuous possession of such land for any five successive years, and has paid all State taxes

charged or chargeable against it for that period, is vested with the title of the State to such land.  *Mahaffey* v. *Batson,* 128 W. Va. 55, 36 S. E. 2d 497; *Stiles* v. *Layman,* 127 W. Va. 507, 33 S. E. 2d 601; *State* v. *Scott,* 91 W. Va. 513, 113 S. E. 907; *State* v. *Haymond,* 84 W. Va. 292, 100 S. E. 81; *State* v. *Morgan,* 75 W. Va. 92, 83 S. E. 288; *State* v. *Moore,* 71 W. Va. 285, 76 S. E. 461; *Litz* v. *Lowry,* 69 W. Va. 181, 71 S. E. 263.   See *Bank of Quinwood* v. *Becker,* 119 W. Va. 534, 194 S. E. 2d 849; *LaFollette* v. *Nelson,* 113 W. Va. 906, 170 S. E. 168; *State* v. *Reger,* 92 W. Va. 76, 114 S. E. 608; *State* v. *King,* 77 W. Va. 37, 87 S. E. 170 L. R. A. 1918E, 1044; *State* v. *West Branch Lumber Company,* 64 W. Va. 673, 63 S. E. 372.

As it is clearly established, and the purchasers in effect concede, that all taxes charged or chargeable against the tract of 412.83 acres for the years 1944 to 1950, inclusive, have been paid by Meadows and the petitioner to the State, it is necessary to consider and determine whether the other essential constitutional requirements of color of title and actual continuous possession have been complied with by the petitioner.

The Public Land Corporation of West Virginia was created by Chapter 54, Acts of the Legislature, 1933, Extraordinary Session.  By that statute it was vested with the title of the State in public lands the title to which now is or hereafter may become absolutely vested in the State by reason of any law governing the title of such lands and it was authorized to acquire from individuals or the state commissioner of forfeited lands, by purchase, lease or agreement, any lands that may be necessary for the public use.  It was also authorized to sell, purchase or exchange lands for the purpose of consolidating them under state or federal administration, and to convey, assign or allot lands to the title or the custody of proper departments or other agencies of the state government for administration and control within the functions of such departments or other agencies as provided by law.  The statute, however, does not contain any other or general provision for the sale, conveyance or disposition of lands held by it to private persons or specify the manner in which

any sale, conveyance or disposition of such lands might be made.

The question whether the Public Land Corporation could sell, convey or dispose of lands held by it and the manner of such sale, conveyance or disposition, was not judicially determined until the decision of this Court in *Sims* v. *Fisher*, 125 W. Va. 512, 25 S. E. 2d 216, in March, 1943, which was several months after the transaction involving the sale of the tract of 412.83 acres to Meadows on November 27, 1942, and the execution of the deed dated December 9, 1942. In the opinion in the *Sims* case, in which certain provisions of Article 4, Chapter 117, Acts of the Legislature, 1941, Regular Session, relating to the sale of lands for the benefit of the school fund, were held to be unconstitutional, this Court held in point 4 of the syllabus that a purchase of land by the Public Land Corporation, at a sale of lands for the benefit of the school fund, in a proceeding under Article XIII, Section 4, of the Constitution, was a purchase by the State and that the lands so purchased could·be disposed of only in a judicial proceeding as provided by that section. In the opinion this Court said: "We see no escape from the conclusion that as to lands purchased by the Public Land Corporation, they must again be sold under Section 4 of Article XIII of the Constitution. This is in harmony with what has always been the expressed policy of the State, namely, to keep its territory in private, as distinguished from public, ownership, to the end that revenues for public purposes may be secured through taxation therefrom, and the land employed for useful purposes in the economic development of the State."

It is clear from the facts and the circumstances established in this case that the members of the Public Land Corporation consisting of the then Governor, the Commissioner of Agriculture, the then Attorney General and the Director of the engineering experiment station at West Virginia University, and Meadows, a former Attorney General and at that time a circuit judge, entertained the opinion that the corporation could sell and

convey the tract of 412.83 acres to him by authorizing such sale and conveyance and by the execution of a deed by the then Governor, as chairman, and the Commissioner of Agriculture, as secretary, of the corporation. It is unreasonable to conclude that these high public officials of this State would have undertaken to authorize and conclude such sale and conveyance or that Meadows would have paid the substantial sum of $1,000 for the land involved if any of them had believed at the time that the Public Land Corporation could not sell the tract of 412.83 acres at private sale or that it could not make a valid deed for it to Meadows as the purchaser.

The undisputed testimony of the Auditor, who was present when the sale was authorized and directed, is that he considered the action of the corporation in authorizing and directing the sale to Meadows to be in the best interest of the State and that there was no concealment or fraud in connection with the transaction. At the time of the transaction the title to the tract of 412.83 acres was in the State by virtue of the sale to the State in 1935 for the non-payment of taxes assessed against the tract for the year 1935, the tract had become irredeemable and subject to sale by the State, and the sale and the conveyance of the land by the corporation were for a substantial and valuable consideration. Though the deed by the former owner, Raleigh County Land Company, to the State did not operate to pass title to the tract of 412.83 acres from that company to the State, for the reason that the company did not then hold any title to the land, the deed did operate to release and extinguish any right of redemption of the Raleigh County Land Company as the former owner of the tract. Under the holding in the *Sims* case, however, the sale of the tract of 412.83 acres to Meadows was invalid and the deed from the Public Land Corporation to him was void and did not operate to transfer to him as grantee the title of the State to the tract of 412.83 acres.

Though the deed from the Public Land Corporation to Meadows dated December 9, 1942, was void it did constitute color of title to the tract of 412.83 acres. This Court

has held in numerous cases that a void deed will constitute color of title to the land described and embraced in it. *State* v. *Blevins,* 131 W. Va. 350, 48 S. E. 2d 174; *Bank of Quinwood* v. *Becker,* 119 W. Va. 534, 194 S. E. 849; *Smith* v. *Casto,* 107 W. Va. 1, 148 S. E. 566; *State* v. *Scott,* 91 W. Va. 513, 113 S. E. 907; *Jarrett* v. *Osborne,* 84 W. Va. 559, 101 S. E. 162; *Russell* v. *Tennant,* 63 W. Va. 623, 60 S. E. 609, 129 Am. St. Rep. 1024; *Stover* v. *Stover,* 60 W. Va. 285, 54 S. E. 350; *State* v. *Harman,* 57 W. Va. 447, 50 S. E. 828; *Bryant* v. *Groves,* 42 W. Va. 10, 24 S. E. 605. It has been said that color of title is merely a judicial fiction which is used in the administration of the statute of limitations for beneficent purposes. *McQueen* v. *Ahbe,* 99 W. Va. 650, 130 S. E. 261. In law color of title is not title at all. It is a void instrument having the semblance of a muniment of title, to which, for certain purposes, the law attributes certain qualities of title. *State* v. *King,* 77 W. Va. 37, 87 S. E. 170, L. R. A. 1918E, 1044. With respect to adverse possession, color of title is that which has the semblance or the appearance of title, legal or equitable, but which is in fact no title. In the absence of fraud or breach of trust in its creation, any written instrument, however defective or imperfect, purporting to pass or convey title to land, which defines the extent of the claim under it, is color of title. *West Virginia Pulp and Paper Company* v. *J. Natwick and Company,* 123 W. Va. 753, 21 S. E. 2d 368; *State* v. *Reger,* 92 W. Va. 76, 114 S. E. 608; *Calvert* v. *Murphy,* 73 W. Va. 731, 81 S. E. 403, 52 L. R. A., N. S., 534; *Point Mountain Coal and Lumber Company* v. *Holly Lumber Company,* 71 W. Va. 21, 75 S. E. 197; *Deepwater Railway Company* v. *Honaker,* 66 W. Va. 136, 66 S. E. 104, 27 L. R. A., N. S., 388; *Ritz* v. *Ritz,* 64 W. Va. 107, 60 S. E. 1095; *Lewis* v. *Yates,* 62 W. Va. 575, 59 S. E. 1073; *Stover* v. *Stover,* 60 W. Va. 285, 54 S. E. 350; *Bennett* v. *Pierce,* 50 W. Va. 604, 40 S. E. 395; *Robinson* v. *Lowe,* 50 W. Va. 75, 40 S. E. 454; *Randolph* v. *Casey,* 43 W. Va. 289, 27 S. E. 231; *Heavner* v. *Morgan,* 41 W. Va. 428, 23 S. E. 874; *Mullan's Adm'r.* v. *Carper,* 37 W. Va. 215, 16 S. E. 527; *Swann* v. *Young,* 36 W. Va. 57, 14 S. E. 426; *Swann* v. *Thayer,* 36 W. Va. 46, 14 S. E. 423; *Cooey* v. *Porter,* 22 W.

Va. 120; *Adams* v. *Alkire,* 20 W. Va. 480. A person who claims, under color of title, a transfer by virtue of Article XIII, Section 3, of the Constitution is a person who relies upon the doctrine of adverse possession and is a claimant in good faith, however defective his color of title may be, if his claim is not predicated upon fraud or breach of trust, *State* v. *West Branch Lumber Company,* 64 W. Va. 673, 63 S. E. 372; and the phrase "color of title" is used in the foregoing constitutional provision in the sense in which it is used in the judicial administration of the statute of limitations and other judicial proceedings. *State* v. *King,* 77 W. Va. 37, 87 S. E. 170, L. R. A. 1918E, 1044. The principal purpose of color of title is to designate the boundary of the land claimed and not to show an actual grant of the land or an interest in it. *State* v. *United States Coal and Oil Company,* 86 W. Va. 256, 103 S. E. 50; *Goad* v. *Walker,* 73 W. Va. 431, 80 S. E. 873; *Stover* v. *Stover,* 60 W. Va. 285, 54 S. E. 350; *Mullan's Adm'r.* v. *Carper,* 37 W. Va. 215, 16 S. E. 527; *Swann* v. *Thayer,* 36 W. Va. 46, 14 S. E. 423; *Oney* v. *Clendenin,* 28 W. Va. 34; *Core* v. *Faupel,* 24 W. Va. 238.

The purchasers, the Fotos, contend in effect that as Meadows was a lawyer, a former Attorney General of this State, and at the time a circuit judge, he should have known that the sale by the Public Land Corporation was invalid and that its deed to him was void and that, for that reason, he and the petitioner, as his associate in the purchase of the tract of 412. 83 acres at private sale, were guilty of constructive fraud in connection with the transaction. In support of that contention they cite and rely upon the cases of *State* v. *King,* 77 W. Va. 37, 87 S. E. 170, L. R. A. 1918E, 1044, and *State* v. *Altizer Coal Land Company,* 98 W. Va. 563, 128 S. E. 286. There is no merit in this contention of the purchasers. As previously indicated no fraud, actual or constructive, has been shown in connection with the transaction between the Public Land Corporation and Meadows. On the contrary it clearly appears that the members of that corporation, in authorizing and directing the sale and the conveyance, and Mea-

dows, in accepting the deed and paying the purchase price of $1,000, acted in good faith. Fraud is never presumed and must be established by clear and distinct proof. *Acker* v. *Martin,* 136 W. Va. 503, 68 S. E. 2d 721; *Kanawha Banking and Trust Company* v. *Gilbert,* 131 W. Va. 88, 46 S. E. 2d 225; *Bennett* v. *Neff,* 130 W. Va. 121, 42 S. E. 2d 793; *LaFollette* v. *Croft,* 122 W. Va. 727, 14 S. E. 2d 917; *Tokas* v. *J. J. Arnold Company,* 122 W. Va. 613, 11 S. E. 2d 759; *McDonald* v. *County Court of Logan County,* 94 W. Va. 773, 120 S. E. 891; *Hunt* v. *Hunt,* 91 W. Va. 685, 114 S. E. 283; *State* v. *Sommers,* 77 W. Va. 675, 89 S. E. 1; *Sansom* v. *Wolford,* 60 W. Va. 380, 55 S. E. 1020; *Board of Trustees of Oberlin College* v. *Blair,* 45 W. Va. 812, 32 S. E. 203; *Clay* v. *Deskins,* 36 W. Va. 350, 15 S. E. 85.

In *State* v. *King,* 77 W. Va. 37, 87 S. E. 170, L. R. A. 1918E, 1044, the grantor in a deed, which was claimed to operate as color of title, made the deed to a trustee for himself and others without consideration for land which he did not own or occupy and in which he had no interest with the specific intent and purpose of using the deed as color of title for land embraced in the deed. Upon those established facts this Court in that case in point 4 of the syllabus held that "A deed made by a person to a trustee for himself, or to himself by another, at his solicitation and without consideration, for land he does not own nor occupy and in which he has no interest, or for such land in addition to his actual possession, with specific intent and purpose to use the same as color of title, cannot be so used by him. His fraud denies it the virtue, force and effect of color of title in his hands." In *State* v. *Altizer Coal Land Company,* 98 W. Va. 563, 128 S. E. 286, a director and stockholder of a corporation, which claimed a forfeited tract of land as its former owner, without any right, or color of title, or the payment of taxes, and for the sole purpose of acquiring the title of the State in the forfeited land of the former owner, caused the forfeited land to be included with other adjoining lands in a deed made by him to another corporation of which he was the president, a director and a large stockholder. The grantee corpor-

ation undertook to use the deed as color of title to the forfeited land against its former owner in claiming a transfer of title to such land by reason of such color of title and possession of the land and payment of taxes charged or chargeable against it for a period of five successive years under Article XIII, Section 3, of the Constitution of this State. This Court held that the attempt to create color of title in the manner indicated was fraudulent and that the deed did not constitute such color of title in the grantee with notice of the fraud as entitled it to a constitutional transfer of the land. In *Eagle Land Company* v. *Ferrell*, 97 W. Va. 608, 125 S. E. 589, a suit to cancel certain deeds as a cloud upon the title of the plaintiff, this Court indicated that as those deeds were procured by fraud they did not constitute color of title.

The facts in the *King* case and in the *Altizer Coal Land Company* case established fraud in the creation of the purported color of title and the facts of those cases distinguish them from the case at bar. As already pointed out, the State held title to the tract of 412.83 acres and received the consideration of $1,000 from Meadows for the land. In the *King* case and in the *Altizer Coal Land Company* case the grantor in the deed relied upon as color of title did not own or possess any interest in the land involved and did not receive any consideration for it from the grantee in the deed. In the opinion in *State* v. *King*, 77 W. Va. 37, 87 S. E. 170, L. R. A. 1918E, 1044, this Court said: "* * * the courts, with few exceptions, have declared that possession under color, to be adverse, must not be fraudulent. 'It must be *bona fide* but it is not necessary that the claimant should believe his claim to be a good or valid one. He may know that some other person has the better right. It is not necessary that he should think his claim good in its inception, for it generally begins in and presupposes wrong; but it must not be fraudulent, nor, except in certain cases well settled, involve any breach of trust.' *Swann* v. *Young*, 36 W. Va. 57"; and in quoting from *Dickenson* v. *Breeden*, 30 Ill. 275, also used this language: " 'The current of the decisions of this

court is, that color of title, made in good faith, is shown by any deed or instrument in writing which purports on its face to convey title, which a party is willing to, and does, pay his money for, apart from any fraud, and pays all the public taxes assessed upon the land so conveyed.' "

The principle is well settled by the decisions of this Court that actual possession of a part of a tract of land by a person claiming it under color of title to the whole tract is possession which extends to and is coextensive with the boundaries of the entire tract described in the instrument which constitutes color of title, unless some part of the tract is in the possession of some other claimant. *Greathouse* v. *Linger,* 98 W. Va. 220, 127 S. E. 31; *Ahner* v. *Young,* 84 W. Va. 336, 99 S. E. 552; *State* v. *Haymond,* 84 W. Va. 292, 100 S. E. 81; *State* v. *Morgan,* 75 W. Va. 92, 83 S. E. 288; *Bradley* v. *Swope,* 77 W. Va. 113, 87 S. E. 86; *Curtis* v. *Meadows,* 77 W. Va. 22, 86 S. E. 886; *Point Mountain Coal and Lumber Company* v. *Holly Lumber Company,* 71 W. Va. 21, 75 S. E. 197; *Marshall* v. *Stalnaker,* 70 W. Va. 394, 74 S. E. 48; *Stover* v. *Stover,* 60 W. Va. 285, 54 S. E. 350; *Camden* v. *The West Branch Lumber Company,* 59 W. Va. 148, 53 S. E. 409; *Maxwell* v. *Cunningham,* 50 W. Va. 298, 40 S. E. 499; *Parkersburg Industrial Company* v. *Schultz,* 43 W. Va. 470, 27 S. E. 255; *Holly River Coal Company* v. *Howell,* 36 W. Va. 489, 15 S. E. 214; *Jarrett* v. *Stevens,* 36 W. Va. 445, 15 S. E. 177; *Oney* v. *Clendenin,* 28 W. Va. 34; *Duff* v. *Good,* 24 W. Va. 682; *Core* v. *Faupel,* 24 W. Va. 238; *Adams* v. *Alkire,* 20 W. Va. 480; *Moore* v. *Douglass,* 14 W. Va. 708. The acts of possession performed on the tract of 412.83 acres by the petitioner and the other persons whom he authorized to use and possess the land constituted possession of the land, by Meadows under the deed to him by the Public Land Corporation and by Thomas A. Hedrick under the deed to him from Meadows and his wife for an undivided one half interest in the land, from 1943 until 1950, when Meadows and his wife and Thomas A. Hedrick and his wife made separate deeds to the petitioner for the tract. After the execution of those two deeds to the petitioner the

possessory acts of the petitioner and the possession of those whom he authorized to use and occupy the land were of course the possession of the petitioner.

Though neither Meadows nor Thomas A. Hedrick testified as a witness in this suit, the testimony of the petitioner and the other established facts and circumstances show clearly that the possessory acts of the petitioner and the persons whom he authorized and permitted to use and occupy the land were authorized and permitted by Meadows and Thomas A. Hedrick, that in the performance of those acts the petitioner was their agent and representative, and that the possessory acts of the petitioner and of the persons whom he authorized to use and occupy the land constituted possession of the land by Meadows and Thomas A. Hedrick. See *Bank of Quinwood* v. *Becker,* 119 W. Va. 534, 194 S. E. 849. The petitioner, under deeds to him from Meadows and his wife and Thomas A. Hedrick and his wife, is the successor in title of Meadows and Thomas A. Hedrick to the tract of 412.83 acres. He claims it from them as his predecessors in title and there was privity of estate in the land between them and the petitioner. In connection with his possession for the requisite period of five successive years the petitioner is entitled to add or tack his possession to the possession of Meadows and Thomas A. Hedrick under whom he claims. A claimant may tack the period of his possession under claim of title to the possession under claim of title of his predecessors in title. See *Sims* v. *Capper,* 133 Va. 278, 112 S. E. 676. See also *Jarrett* v. *Stevens,* 36 W. Va. 445, 15 S. E. 177. In fixing the duration of possession, a person has the right to tack to his possession the possession of those under whom he claims. *Christian* v. *Bulbeck,* 120 Va. 74, 90 S. E. 661.

The possession required to effect a transfer under Article XIII, Section 3, of the Constitution need not be adverse possession. The only requisite possession is actual continuous possession. *Bank of Quinwood* v. *Becker,* 119 W. Va. 534, 194 S. E. 849; *State* v. *Haymond,* 84 W. Va. 292,

100 S. E. 81. The continuity of such possession is the same as that which is essential to adverse possession. In the law of adverse possession, continuous possession means possession which has not been abandoned by him who claims such possession and uninterrupted possession means possession which has not been effectually broken by the possession of another person. *Swann* v. *Young,* 36 W. Va. 57, 14 S. E. 426.

As previously indicated, the numerous acts of possession by the petitioner and other persons, authorized and permitted by Meadows and Thomas A. Hedrick, acting by the petitioner as their agent and representative, in the use and occupancy of the tract of 412.83 acres were the posting of notices against trespassing at several places on the tract, some of which were continued in place for a period of more than five years from 1943 and until after the institution of this suit; the renting of the old house on the land in 1943 to a tenant who occupied it for a period of several months and cultivated a garden in connection with it; the occupancy of the land by the Millers as tenants under a contract with the petitioner which continued from 1943 until 1950 and by which the Millers used and occupied the land for several months in each year for grazing and, when not so using it, used and went upon the tract to keep in touch with its condition and to report any fires or trespasses on it to the petitioner; the presence on the land of employees of the petitioner during a period of several months in ascertaining the amount of timber on it and in locating some of the corners of its boundaries; the frequent visits and presence of the petitioner in connection with the planned development of the tract and his exercise of dominion over it; and his acts upon the land in connection with negotiations for the sale or removal of the timber and in causing persons in the neighborhood of the tract to regard him as its owner or the representative of its owner. Though some of these acts did not continue for a period of five years, others, such as the posting of notices against trespassing and the tenancy of the Millers did continue without interruption for more than that period

of time. At no time did Meadows, Thomas A. Hedrick or the petitioner intend to relinquish or abandon possession of the land. Occasional intermittent trespasses were committed by other persons in walking through or hunting upon it but these acts did not disturb or effectively break the possession of the respective claimants to it. Though intermittent acts of trespass, the occasional use for grazing, cutting of timber, or cultivation, by a claimant to land under color of title, do not constitute continuous adverse possession, *Eagle Land Company* v. *Ferrell,* 97 W. Va. 608, 125 S. E. 589; *Chilton* v. *White,* 72 W. Va. 545, 78 S. E. 1048; *State* v. *Moore,* 71 W. Va. 285, 76 S. E. 461; *Wade* v. *McDougle,* 59 W. Va. 113, 52 S. E. 1026; *Wilson* v. *Braden,* 56 W. Va. 372, 49 S. E. 409, 107 Am. St. Rep. 927; *Yokum* v. *Fickey,* 37 W. Va. 762, 17 S. E. 318; *Oney* v. *Clendenin,* 28 W. Va. 34, the decision on this point in each of those cases depended upon its particular facts; and the intermittent and occasional possessory acts considered in each of them were materially different from the aggregate of the acts of possession shown by the evidence in this suit and the occupancy of the land by the Millers whose use for grazing their cattle persisted for several months in each successive year of their tenancy. The continuity of the possession established in this case is analogous to that shown and held to be sufficient to constitute actual continuous possession of an unimproved lot in *Stiles* v. *Layman,* 127 W. Va. 507, 33 S. E. 2d 601. In that case this Court said:

"The evidence of possession under the tax deed of lot No. 93 is likewise sufficient. The defendant Layman testifies that immediately after receiving his deed he placed one Stevens, the owner of an adjoining lot, in possession of said lot No. 93, in consideration of his clearing and caring for the same, and that Stevens thereupon occupied the lot for a garden and cow pasture up to and including the year 1937, during which he kept the lot inclosed with a barbed wire fence. Stevens concurs in this statement to the extent of saying that he took possession of the lot shortly after Layman acquired it and proceeded to clear

it of brush, briars and other filth from a part thereof, and that some parts of it were never actually cleared. He further testifies that the lot was inclosed by barbed wire from the time he turned his cow therein, which appears to have been immediately after the first crop was removed in 1934, until his occupancy terminated in the fall of 1937. The defendant Layman testifies that his father gardened the lot for the season of 1938. The lot was conveyed to the defendants, Dulins, under date of December 12, 1938. They gardened the lot during the season of 1939, and in the fall thereof began the construction of a dwelling house thereon which, when completed, was occupied by them until the lot was conveyed to the defendant Fisher after the commencement of this suit. We think that the possession thus shown was 'actual continuous' possession under color and claim of title from the spring of 1934 to the time of the institution of this suit in August, 1940, within the meaning of the Constitution. Actual possession of land does not require that every foot shall be physicially occupied by the possessor. The Constitution, by its very language, gives the possessor the benefit of color of title. When Layman took and maintained possession through Stevens and his father his possession extended to the precise limits of the boundaries of the lots as shown by his deed and the plat defining the lots. Stevens testifies that the corners of the lot were marked by iron and wooden stakes, and the continuity of the possession under Layman was not broken. True, there were possibly short intervals between seasons and successive occupants when the lot was not in physical occupation by such users, but such periods occur in all occupation of land and are not held to make the possession discontinuous."

The only material element of the possession of Layman which is missing from the possession of the petitioner is the enclosure for about three years of the Layman lot, but this difference is not regarded as substantial or of differentiating importance or effect. In *State* v. *Morgan,* 75 W. Va. 92, 83 S. E. 288, this Court said: "The exercise of control over unenclosed timber lands by working thereon at

times, and in excluding interference therewith by others, constitutes actual possession."

As the petitioner G. C. Hedrick, claiming the tract of 412.83 acres under color of title, has had actual continuous possession of the land for five successive years, and as he and Meadows, one of his predecessors in title, have paid all taxes charged or chargeable against the land for that period, he has title to the tract by transfer under the last clause of Article XIII, Section 3, of the Constitution of this State; and the tract was not subject to sale in this suit for the nonpayment of taxes against it. *State v. Harman*, 57 W. Va. 447, 50 S. E. 828.

The final decree of July 15, 1953, entered of record by the Circuit Court of Raleigh County is reversed and set aside and this cause is remanded to that court for such further proceedings as may be necessary in conformity to the principles enunciated in this opinion.

*Reversed and remanded.*